The opinion of the Court was delivered by
WITHERS, J.
In Durand vs. Isaacs, 4 McC. 54, an application was made to the Court of Law to foreclose a mortgage of real estate where the • mortgagor was out of possession, but his alienee (it is presumed) was in possession. The jurisdiction of the Court was denied, upon the terms of the Act of 1791. That Act changed the theory of law (which, upon condition broken, made the mortgagee the owner of the.land,) in the case when the mortgagor was in possession; in which case, in order to avoid delay and expense in foreclosing the *689 mortgage, and. for tbe purpose of barring tbe equity of redemption, a jurisdiction (when other circumstances mentioned concurred) was given to tbe “Judges of tbe Court of Common Pleas,” which our practice has interpreted to be any one of such Judges, to cause tbe mortgaged premises to be sold to pay tbe debt secured. The second section enacted, that, though the condition of defeasance had been broken, the mortgagor should not bring any possessory action, but the mortgagor should still be deemed the owner of the land, and the mortgagee should be enabled to recover satisfaction of his debt, in the manner and under the circumstances before prescribed, by the agency of the Judges of the Court of Common Pleas: “ Provided (says the Act) always, that nothing herein contained shall extend to any suit or action now pending, or when the mortgagor shall be out of possession, nor to contravene in any way the ordinance entitled ‘An ordinance to encourage subjects of foreign States to lend money at interest on real estates within this Statenor to deprive any person of any right which he, she, or they may have at the time of passing this Act.”
The question in the case of Durand vs. Isaacs was, whether the proviso recited had relation, by the words, “herein contained,” to.the whole Act, or only to the second section, which contained it; and it was adjudged that it had relation to the whole Act. The consequence necessarily followed, that where the mortgagor was out of possession of the mortgaged premises, the parties were left under the rule of the common law, which rule made the mortgagee the owner of the land upon condition broken. This view of the Act of 1791 (5 Stat. 169) was adopted and reaffirmed by the case of Stoney and Shultz, 1 Hill Ch. 465. This explicit exposition of the proper construction of the statute law leaves no other conclusion than that the plaintiff in this case is not one who is forbidden to bring a possessory action by the statute of 1791, but is one who at common law was clothed with the *690 title to’the land in question, and must have the right inseparable from such title to maintain this action. This incidental right cannot be affected by that privilege" which the Court of Equity might offer to a mortgagor, or other person clothed with his equity in that behalf, to' extinguish the mortgage, even after condition broken, by paying all that is due to the mortgagee. The position for a nonsuit, therefore, is ill conceived, that the mortgagee cannot maintain this action until he has regularly foreclosed the right to redeem. Whether the plaintiff could lawfully buy the land at a sale made by virtue of a power to sell stipulated in the mortgage, which is the subject of the third ground for a new trial, need not be discussed; for the plaintiff was entitled to his action independent of any sale, by force of the legal operation of the mortgage itself.
This power to sell real estate, conferred by the mortgagor upon the mortgagee, is not familiar in our observation, but it is sometimes inserted in conveyances by way of mortgage of land. Nor is it liable to any legal objection. It is now usual, in England, says Mr. Coote, in his treatise on the law of mortgage, and it seems to be common enough in various of the States of the Union. Notwithstanding Lord Eldon once doubted the validity of such a power, it was exerted in his time, as may be seen in the case of Clay vs. Sharpe, cited in a note, 18 Ves. Jr. 846. It seems to have been adopted to serve the ends of both parties to the mortgage, accompanied sometimes with qualifications that look to investment of the surplus, or disposition of it, for the benefit of the mortgagor, and serves to avoid formidable costs of foreclosure in equity, and accumulation of interest by delay. Enough upon this subject may be seen by consulting chap. 6, p. 124, Ooote on Mortgages.
■ It is very manifest that the sale by Hewett to Williams was ineffectual as against the plaintiff’s mortgage, for the *691 delivery of fbe deed was subsequent to it, tbe mortgage being duly recorded.
The motions for nonsuit and new trial are dismissed.
O’Neall, Glover, and Munro, JJ., concurred.
Wardlaw, J.
I'think that the conclusion attained by the Court in this case is legitimately drawn from the cases of Durand vs. Isaacs, (4 McC. 54,) and Stoney vs. Shultz, (1 Hill, Ch., 465): and those cases have been followed by so many others, in the construction given to the second exception which is contained in the proviso annexed to the second section of the Act of February, 1791, (5 Stat. 169,) that I will not venture to dissent now.(a)
*692 But my settled, opinion is that that construction is erroneous ; that the reasons, which have been assigned for it are *693 insufficient, that it strains tbe words used by tbe Legislature, and that it produces discrepancies and confusion in tbe application of an important statute. According to the circumstance of a mortgagor’s being or not being, at some time yet unascertained, in that condition which is expressed by the words “ out of possession,” the rights of all persons, in any way connected with a mortgage, are widely varied. Two systems prevail in the two classes of cases thus distinguished: the number of cases in the class least numerous is considerable, if not almost equal to the number in the other; to one or the other class, a case may often be assigned at the will of one party, without consultation with others whose interests are affected, and without even notice to them: and the difference is not merely a difference in remedies, and forms of proceeding, but always a difference in legal principles and in tribunals, and sometimes in the value and extent of rights, if not their very existence. In the hope that inquiry may be excited, and that at some future time symmetry and uniformity may be restored to the law upon this subject of daily occurrence, or the reasons for the distinction, which I consider so mischievous, more clearly pointed out than they have yet been, I will indicate the views which have led to my opinion. If I should be tedious some apology for that may proceed from the high respect which I entertain for the opinions of judges from whom I will differ, and especially for those of Judge Nott, whose arguments chiefly, I will be rash enough to assail.
The case of Durand and Isaacs, came to judgment in November, 1826, thirty-five years after the Act of 1791 was passed, and twenty-six years after the rule of Court to regulate the practice of ordering sales under its first section, was, without *694 reference to any distinction between cases, adopted.(a) Then the important distinction made by the mortgagor’s being out of possession, was for the first time announced.(b) The difficult circumstance in the case was that Shubael Lawrence, the person in possession of the mortgaged premises, had entered under an absolute conveyance to himself from the mortgagor, executed more than six months after the date of the mortgage, and'before the mortgage was registered. Judge GrANTT on the Circuit, upon application made to him by the mortgagee for an order of sale, did not, upon the supposition that Lawrence was a party before him, between whom and the mortgagee he was to decide, hold that the registry Acts gave to Lawrence’s conveyance priority over the mortgage: nor did he upon the supposition that only the mortgagee and mortgagor were before him, hold that'Lawrence’s rights would not be affected by the order of sale, but that they would remain to be considered in a contest between the purchaser and him; but, after hearing Lawrence’s affidavit, he held that the proviso, in the second section of the Act of 1791, “ had no relation to the first” section, under which the Court of Common Pleas was authorized to order the sale. And then, impliedly acknowledging the relation which had just been denied, he went on to hold that “the time when the mortgagor’s being out of possession shall prevent the mortgagee’s obtaining an order for the sale of the lands mortgaged, must be construed to be the date of the execution of the mortgage.” He added doubtfully “ that an order for sale would not affect the rights of third persons, who did not claim under the mortgagor subsequent to the mortgage and granted the order for sale.
Judge Nott, delivering the opinion of the Court of Appeals, then composed of three judges, first established to his ■ own satisfaction, that the proviso, annexed to the second *695 section of tbe Act, extended to tbe first section as well as to tbe second; and coming then to tbe exception “ wben tbe mortgagor shall be out of possession,” said, “ Tbe reason of tbe exception is obvious. Wben tbe mortgagor is out of possession, tbe right of some third person must be involved, and according to tbe forms of proceeding in a common law Court, such third person could not be a party; and it would be nugatory to order tb.e sale' of a man’s property, who was not before Court. For 'the purchaser would acquire nothing more than a right to bring a- possessory action for tbe land, which is still reserved to tbe mortgagor by tbe Act. It was intended in such case to leave tbe party [mortgagee,] to bis remedy in tbe Court of Equity, where be might bring all tbe parties before tbe Court, and by a single operation obtain bis money or foreclose tbe equity of redemption, and to draw from that Court only those cases in which tbe parties could have an ample remedy in a Court of law, which could not be1 bad where others than tbe immediate parties to the contract were concerned. I am of opinion that .this is not one of the cases provided for by tbe Act, and that the remedy is in tbe Court of Equity only. The order of tbe Court below for tbe sale of tbe property must be- reversed.”
Whether the result of tbe case of Durand vs. Isaacs might be reached by some other reasoning, is now immaterial. These observations of Judge Nott, although made upon the express assumption, that when the mortgagor is out of possession the rights of some third person must be involved, and made in a case where strong rights of a third person were set up and not denied, have established as a general rule in our law" Courts, that whenever-the mortgagor is out of possession,, the Act of 1791 is ineffectual either to give jurisdiction to the Common Pleas under its first section, or to regulate the rights of mort-gor and mortgagee under the second section. They were approved by the Court of Appeals in Equity in Stoney vs. Shultz, (1 Hill. Ch. 497,) and were there carried forward to *696 the results, that a mortgagee might, as at common law, enter upon tbe mortgaged land left vacant, or take tbe profits, even by distress, of those portions of it which were in the possession of the mortgagor’s tenants. The case now in hand only deduces a plain corollary in holding that a mortgagee may, as at common law, recover possession of the mortgaged land, from the mortgagor’s .vendee.
To understand the reasons for and against the distinction which I purpose to combat, a clear conception is necessary, of the rights of various parties under a mortgage before the Act of 1791, and of the changes wrought by-that Act, connected with its appendant, the Act of 1797, (5 Stat. 311,) upon cases confessedly within its operation. I will advert to only a few particulars, which may be suggestive of others.
Before the Act, the legal ownership of the land was, on the execution of a deed of mortgage, transferred to the mortgagee, subject to be divested by the performance of the condition. A legal right of re-entry, on performance of the condition, remained in the mortgagor and his heirs; but after breach of the condition, the mortgagee’s estate became at law absolute and indefeasible. The mortgagor’s equity of redemption after breach, not recognized at law, was enforcible in equity until it had been foreclosed, and was there considered not a mere right but an estate: the mortgage being there held to be a mere security in the nature of personal assets. An equity of redemption was not subject to the lien of a judgment, or to levy under a fieri facias ;(a) but in equity assignments, devises, incumbrances, and rights of succession after death, were freely permitted in reference both to the land and the mortgage — the equity of redemption, on one hand, and the security attended by the legal title on the other. Upon death of the mortgagor, without previous assignment or incumbrance of his interest, the equity of *697 redemption passed to bis devisee or beir: upon like death of tbe mortgagee, the land passed to his beir or devisee, in trust, for his executor, tbe owner of the debt secured. A union of the legal estate and the equity of redemption, constituted a perfect title; and as a sale by tbe mortgagee, after an effective release made to him of tbe equity by tbe owner thereof, conveyed such a title to a purchaser, so did a sale made by conjoint authority of tbe owners of tbe two interests, the equity and tbe security, such- as a sale made under proceedings in equity bad between these owners. A simple foreclosure of tbe equity of redemption made the mortgagee’s title irredeemable by any person whose right had been foreclosed: but to make it perfect, all who had a right to redeem must have been made parties. So, also, a release of the equity made by the mortgagor, whilst it belonged to him, was effective; but other persons having the right to redeem were not bound by the release, if they were in no way parties to it. The right to redeem extended (with special exceptions) to all who were assignees, incumbrancers, or successors of the mortgagor’s equity, and might have been enjoyed by various parties in succession; each, by paying all the debts for which the land was security, prior in obligation to his own debt, or his own acquisition of right, obtaining the legal estate, subject to redemption by those who followed him; but the right to redeem, if opposed, always required the aid of a Court of Equity for its enforcement, and was not complete in fruition until there had been a reconveyance from the owner of the legal estate. A mortgagee’s right to pursue all legal remedies, for collection of the mortgage debt, was not restrained by a Court of Equity, except perhaps where after foreclosure he had rendered redemption impossible by selling the land, and then sought at law an unpaid balance :(a) any pro-proceedings at law after foreclosure opened the foreclosure *698 and restored tbe equity of redemption. However common may bave been a sale of mortgaged land decreed by tbe Court of Equity in this State, or in Ireland, a sale was decreed in tbe English Chancery only in certain peculiar cases, and always with just reference to tbe equities that subsisted between tbe mortgagor and a purchaser from him, as to the payment of any balance that stood unpaid.(a) When a sale did take place, tbe right of further proceeding at law by the mortgagee for a balance seems not to have been questioned.
The Act of February, 1791 undertook, in some measure at least, to establish at law the doctrines which, before, had prevailed in equity concerning mortgages.
The first section was intended to meet so much of the title as speaks of an “ easier and cheaper mode,” &c., than the mode of foreclosing by bill in equity, which in the preamble is denominated “ tedious and expensive.” It empowers the Court of Common Pleas to order a sale of the mortgaged land for satisfaction of the mortgage debt, whereby the mortgagor shall be barred of his equity of redemption; but confines this new remedy to the case where a judgment is obtained against the mortgagor, on the bond or other evidence of the debt which is secured by the mortgage, and another judgment against him has intervened between the execution of the mortgage, and this judgment for the mortgage debt. The proviso to this section, to remove the inconvenience mentioned in the preamble, of the mortgagor’s being driven to a bill in equity, for redemption after breach of the condition, allows him to procure satisfaction of the mortgage, at any time before sale, by tender or payment of. the amount due.
This section might have stood alone, and so standing woqld have given a convenient cumulative remedy in the special case provided for. The judgment for the mortgage *699 debt would bave been in lieu of an accounting concerning it bad in equity, and tbe order of tbe law Court in place of a decree for sale made at tbe instance of a mortgagee. But if there had been no intervening judgment, tbe law Court would bave been without authority to make an order of sale for satisfaction of tbe mortgage; and without such an order, or aid from equity, the mortgagee could not, either by himself or by tbe Sheriff, bave sold tbe land discbaged from tbe equity of redemption, nor have claimed surplus proceeds of a sale of it made under a judgment older than bis mortgage, nor have enforced tbe redemption of it from an older mortgage. Connected with tbe second section, which establishes tbe legal ownership of the land in the mortgagor, the first section becomes more extensive in its operation; or rather, tbe reason for its special provision becomes apparent from the new rights which result to the mortgagee, and which render an order for sale unnecessary in many of tbe cases not provided for. By force of tbe second section, if there be no intervening judgment, the mortgagee can sell the land, now tbe mortgagor’s, under bis judgment for tbe mortgage debt, and take the proceeds after satisfaction of judgments older than the mortgage, if there should be any such: he can sell subject to an older mortgage; all junior judgments and mortgages he may disregard; and in general, after obtaining his judgment at law for the mortgage debt, he needs no special aid, except that given by the first section of the Act, to remove a judgment which intercepts the proceeds of his own judgment on their way to serve the lien of his mortgage. We see that the Act contemplated a general system.
The second section makes the great change in the law of mortgages, and of this by far the most important clause is that which enacts that the mortgagor shall be owner of the land, even after breach of the condition. That tbe mortgagee should not recover the possession, nor have any other *700 incident of ownership, is only a consequence of this clause; yet the particular concerning possessory actions is first set forth negatively, and the general affirmative rule is after-wards introduced so as to appear subordinate, as if it had been mentioned merely to illustrate e contrario, the prominent particular.
The proviso annexed to this section saved from the influence of the section, or perhaps of the Act, first, suits then pending; second, cases “ where the mortgagor shall be out of possession;” third, the provisions of “an ordinance to encourage subjects of foreign States to lend money at interest on real estates within this State;” and, fourth, all rights which existed at the time the Act passed.
The ordinance here mentioned was passed in 1784, (4 Stat. 692.) It enables aliens, who may lend money in this State, to become mortgagees, and to prosecute 'Suits, whether their sovereign be at war with the United States or not'; to avail themselves of the covenants in their mortgages, and to obtain decrees in Chancery for the sale of mortgaged lands; but not themselves to acquire possession of the lands, or to become absolute owners thereof by any decree for simple foreclosure. The new rémedy given by the first section of the Act, if it were intended to be cumulative, (as it seems plainly -to be,) (1 McC. Oh. 222,) could not have hurt these foreign creditors, nor have affected the rights of their debtors, any more-than every increase of facilities for enforcing contracts can be said to affect the rights of contracting parties. BLow, if at all, any of the provisions of the second section could have been unjust or injurious on either side, it is useless now to consider. The fear of exciting distrust, or of disturbing contracts made in reference to special legislation, no doubt, suggested- in great caution the- exception concerning this ordinance. To the other exceptions, recurrence will be had hereafter.
The third section of the Act was probably designed to *701 guard ¿gainst evils which had been experienced from the defeat of an intermediate mortgage, by a subsequent one’s acquiring, through aid of the first, the legal estate ; and from tacking, and from secret incumbrances.
The fourth and fifth sections substituted, in the trial of title to lauds, the action of trespass for that of ejectment, “rarely understood but by professors of the law.” These sections were, however, so deficient in details that at the next session of the Legislature, in December, 1791, an important directory amendment was deemed necessary. (7 Stat. 276.)
Judge Brevard, in his notes upon this Act, (1 Brev. Dig. 175,) criticizes the careless use in the first section of “ Judges” for Court, and of “judgment in the action hereby allowed to be commenced,” for the judgment first above • mentioned. A review of the Act would point to more substantial defects, of which some have been supplied by Acts of the Legislature, rules of Court, and decided cases, and some remain to become subjects of future contention. But in the question of construction now before us, which, as will be seen, turns much upon grammatical propriety, mere trifles may serve to settle the standard of accuracy, which we should impute to the penman of the. Act. Attention is, therefore, called to these words near the beginning of the second section; “is elapsed,” and “ but the mortgager shall be still deemed owner of the land, and the mortgagee as owner of the money lent or due, and [he] shall be entitled to recover satisfaction for the same out of the land, &c.” Would • the writer of this be incapable of mistake in his use of the tenses ?
The Act of 1797, (5 Stat. 311,) shows in the preamble, the strong force which doubters had ascribed to the provision, that the “ mortgagor shall be still deemed owner of the land,” and the forgetfulness of all third persons which prevailed in attributing a necessary and uniform effect in all cases to a transaction between mortgagor and mortgagee, if those words are to be understood in their narrow, literal sense, as descrip *702 tive of only two individuals. The enactment gives effect to what it calls “ releases of the equity of redemptiona clear misnomer Judge Nott says, in State v. Laval, (4 McC. 340;) an inconsistency to which only legislative power could give effect, Judge Brevard seems to think, (1 Brev. Dig. 177, note.) The Act of 1797 certainly does not, by its words, conduce to a clear conception of the scheme of the Act of 1791, but its purport and effect are easily reconciled with that scheme, when that has been clearly perceived.
Throughout the Acts of 1791, and 1797, (as has been just hinted at in reference to the latter,) mortgagor and mortgagee only are mentioned, without allusion anywhere to the transfer of the rights of either party, by act in his lifetime, or by his death. Yet it surely was intended, and such has been the received interpretation, that the assignee or executor of a mortgagee should have the same rights and remedies as he himself had: all to whom his rights come are included under the term mortgagee. In like manner the heir or devisee .of a mortgagor must have been intended to have, and has been understood to have, the same legal ownership and the same right of disencumbering the land by payment, as the mortgagor himself. The inference is natural that the term mortgagor included every one who should stand in the place of the mortgagor, who should have his legal estate and his right to disencumber it, whether heir, devisee, donee or vendee. Amidst the changes and divisions of right, which the acts and death o'f the mortgagor may produce, a class of third persons might arise, who would have, at law or in equity, his right to disencumber the mortgaged land for their benefit, but not his legal estate in it, — such as his executor, his subsequent mortgagee, his judgment creditor, and various representatives and encumbrancers of his alienee or successor. These the Act could not, for many purposes have embraced under the term mortgagor, although their rights spring out of and are regulated by the enactments concerning the mortgagor. *703 Here it may be observed, that although the distinction, (which is still kept in view, however distant,) rests upon close adherence to the very words used in one part of the Act, its supporters must admit a wide extension of other words, by intendment.
After this examination of the Act of 1791, and its exegetical supplement of 1797, a hasty view of the changes wrought by it, in cases confessedly within its operation, will bring us to a special consideration of the distinction, that excepts many cases from these changes, and of the reasons which have been assigned in its support.
Under the Act, an instrument called a mortgage has a meaning widely different from that which its words, in its ordinary form express: as different as the condition expressed in a bail bond is from the condition which by statutory authority, is imputed to it.(a) If a mortgage were written so as to conform exactly to its legal meaning, it would be hard to range it under any known head of the law: and without respect to form, it must be treated as if it were so written. It is not a conveyance, either under ancient law or under the Statute of uses; for it transfers no estate in the land whatever. It is not the acknowledgment of a condition subsequent, .by which the estate of the mortgagor may be defeated, nor the stipulation by the owner of land of a covenant, which runs with the land and imposes a burden on it; for such a condition, or such a covenant, can be created only when an estate in the land is transferred. Perhaps, it might be properly considered the creation of a power to be exercised on contingency: but no ordinary creation of a power without an estate has its encumbering effect. It is an agreement by deed properly attested, which is permitted by intendment of ■the statute law, to cause a lien upon the land mortgaged by it; and effect is given to the lien through an irrevocable power to sell the land, or procure the sale of it, in a certain *704 manner and upon a certain contingency. This power, express or implied, is contained in the agreement, and the execution of it has relation to the deed which created it.
Many of the terms of art appropriate to a common law mortgage are not strictly applicable to this, our mortgage under the Act of 1791, and when applied to it, tend to mislead, if their signification be not properly modified. There can be under the Act, no redemption, before sale for satisfaction, for no estate to be redeemed, has passed from the mortgagor, or those who hold under him, until a sale which bars their title. What is generally called the equity of redemption, is a legal right in the owner of the land to disencumber it: if in one who does not own the land, there should be an equitable right to satisfy the mortgage for his own benefit, it would be, before sale, an equity to disencumber, and not to redeem: in possible cases, after sale, a right to redeem might exist. There can be no simple foreclosure, for if all right to disencumber was taken away, and nothing more done, -there would still be no estate in the mortgagee. The release of the equity of redemption, is a conveyance of the land to him who has the incumbrance.
With the debt secured by the mortgage may pass the security, and whatever right, legal or equitable, the act or death of the mortgagee, or of any person deriving right from him, can give to another in the debt, the same may it give in the security, if that remain undischarged.
The mortgagor and every person who acquires his estate, may alien, encumber and in every way dispose of the land, as if there was no mortgage : the land remaining, in the hands of every one to whom it may come, subject to the original lien, (if there be no special equity exempting it,) and that lien remaining liable to be satisfied by every owner of the land,' until the sale for satisfaction shall have been had.
So long as the mortgagor remains owner of the land, every judgment against him acquires on the land a legal lien(a) sub- *705 jeet to tbe mortgage: and so subject tbe land may be sold under an jfi.fa. against the mortgagor subsequent to the mortgage. After tbe mortgagor’s estate has been transferred by him, or has descended from him, tbe land is in like manner liable to lien and sale under judgments against every.subsequent owner of it. Thus an interest to disencumber — even a legal title, or a lien in tbe land — may be acquired by classes of persons, who could not at common law have been amongst those who might be entitled to tbe equity of redemption.
We come now to the important words contained in tbe proviso annexed to tbe second section of the Act of 1791, “ when tbe mortgagor shall be out of possession.”
When shall tbe mortgagor be said to be out of possession? When tbe possession is vacant ? (Stoney v. Shultz.) When bis tenant at will is in? his tenant for years? (Stoney v. Shultz) — bis heir or devisee? bis vendee who bought and entered, without notice, after tbe execution of tbe mortgage ? (Durand v. Isaacs,) or one who entered with notice? or one who bought and entered before the’ execution of the mortgage ? an owner by a title superior to any be ever bad ? an adverse occupant ? a casual trespasser upon a constructive possession ?
To what exact time does this being out of possession refer? to tbe date of tbe mortgage — tbe filing of tbe suggestion required by tbe forty-second rule of Court — tbe service of tbe ten-day rule — tbe obtaining of judgment for tbe mortgage debt: or tbe sale for satisfaction ?
If tbe mortgagor is legal owner when be is in possession, and tbe mortgagee becomes legal owner when the mortgagor is out, what effect, if any, would, in various cases, be produced by a re-entry of tbe mortgagor ? Say before breach of tbe condition, and after; before and after tbe expiration of a lease made by him; before and after a certain time from a vacancy left in tbe possession ? If tbe legal title cannot again shift without writing, after tbe mortgagee has once entered, *706 who is legal owner in the interval between the mortgagor’s going out and the mortgagee’s entry ?
Can the mortgagor, by abandoning the possession or putting in a tenant, at any time before the mortgagee commences proceedings to procure a sale, at his pleasure deprive the mortgagee of the cheaper and easier remedy under the Act of 1791 ? Can he, at the same time, divest all his own judgment creditors, who obtained judgments against him after the execution of the mortgage, of the liens which they had at law on the mortgaged land, whilst he was legal owner of it? If he had remained in possession, under’arrangement with his vendee tó whom he had conveyed, can he also affect the liens on the land, which judgment creditors of that ven-dee had acquired ? If his vendee is in possession, what is the nature of the right which would be acquired in the land by judgments against the vendee, after the mortgagor went out?
If the mortgagee is legal owner when a vendee, of the mortgagor is in, why does not the statute of limitations run •in favor of the vendee against the mortgagee’s right ? (See Thayer vs. Cramer, April, 1826, 1 McC. Ch. 397; Nixon vs. Bynum, 1829, 1 Bail. 150; Thayer vs. Davidson, Bail. Eq. 426; Smith & Cuttino vs. Osborne, 1 Hill Ch. 342; Drayton vs. Marshall, Rice, Eq., 380, 385; 4 Rich. Eq. 164; 5 Rich. Eq; 81.) In Thayer vs. Cramer, decided only a few months before Durand vs. Isaacs, a vendee was in, yet Judge Nott, so far from considering the Act of 1791 inapplicable to the case, rested his opinion upon the force of the Act. In Nixon vs. Bynum, two years after the decision of Durand vs. Isaacs, again a vendee was in, and again Judge Nott, forgetful of the distinction made by the mortgagor’s being out of possession, refers to the Act, and that in the case of a mortgage which preceded it. In Thayer vs. Davidson, mortgages of real estate in general are distinguished from those of personalty. In Smith & Cuttino vs. Osborne, again a vendee was *707 in possession, and tbe Act of 1791 invoked to save tbe mortgage from tbe operation of tbe statute. In Drayton vs. Marshall, Chancellor Harper showed that tbe statute will run against a mortgagee, who has tbe fee and may sue for tbe possession, and expressed bis opinion that tbe cases of Thayer vs. Cramer, and Smith & Cuttino vs. Osborne, cannot be reconciled with tbe decision in Durand vs. Isaacs, and Stoney vs. Shultz, which be considers to have determined, “that where tbe mortgagor is out of possession, tbe Act of 1791 has no operation at all, but tbe mortgage remains in every respect as at common law; that is to say, that by alienating tbe land and transferring tbe possession, tbe legal title becomes vested in tbe mortgagee, who may forthwith bring bis action at'law, if tbe mortgage be forfeited.”
If a mortgage is in tbe bands of a mortgagee’s executor, who is owner of tbe money secured, and tbe mortgagor dies in possession, or transfers the possession to bis vendee, does this death or transfer avail to convey tbe legal estate to tbe heir of tbe mortgagee, in-trust for his executor?
Tbe resolution of these questions will, I think, bring conviction that “tbe reason of tbe exception is not obvious;” that it is even unsafe to assume that, according to tbe meaning of tbe Legislature, “ when the mortgagor is out of possession, the right of some third person must be involved;” and that there are difficulties yet to be overcome, before tbe lines of the great distinction that has been made can be clearly settled. It will, perhaps, appear highly probable that tbe Legislature, in framing tbe exception which has been made so important, thought not of tbe distinctions between practice at law and practice in chancery, nor of tbe rights of third persons, but only, as I will attempt hereafter to explain, of a restriction, obviously proper upon tbe general rule of ownership which bad just been enacted.
It is inferring tbe sense of the Act from matter extrinsic and subsequent, to advert to tbe forms of proceeding since *708 adopted in our law Court, and say that according to them a third person could not be made a party. Eor aught that is to be found in the Act, or in the nature of a law Court, those who adopted the Act maybe supposed to have-expected that a third person would, when necessary, be so brought forward that his rights might' be adjudged, and be concluded by an order of sale made under the first section! Power is given to the Court of Common Pleas to order the sale in the state of affairs specified; but in the defectiveness of detail which prevails throughout the Act, there is an- omission of all direction concerning proceedings which should precede the order. Some notice and some exact statement of matters which might be confessed or traversed, must of course have been approved,(a) if ever the course which would be taken was contemplated by the framers of the Act. In 1800, a rule of Court was adopted, which has remained unaltered ever since, requiring a suggestion and a rule to show cause. It directs the rule to show cause to be served on the defendant in the action brought for recovery of the mortgage debt; but familiar proceedings against garnishees in attachment, and in rules to show cause why satisfaction of a judgment or mortgage should not be entered, and in other cases of suggestion and rule to show cause, make it plain, that there would be nothing inconsistent with the practice of the Common Pleas, for the rule of Court to require notice to be given to any third person in possession of the mortgaged land ; and for the Court, in default of sufficient cause to the contrary shown, to make an order conclusive of such person’s rights. Even exhaustion of the other means of the mortgagor, before resort to the mortgaged land, might be effected by suitable delays and directions in the order for sale, in cases where the rights of vendees, devisees, subsequent mortgagees, or other third persons, brought to the view of the Court, de *709 served special favor. In at least one reported case, third persons were made parties to the suggestion by notice, and no objection seems to have been taken. McClure vs. Mounce, 2 McC. 424; Cont.(a) The prevailing practice should not be considered to furnish a legitimate exposition of the Act, unless it appears to employ all the power which the Court might under the Act exercise.
The argument in favor of the distinction in question, asserting the incompetency of a common law court to give ample remedy, where any person besides the “immediate parties” to the mortgage is concerned, sets forth the circumstance of the mortgagor’s being out of possession as a criterion, by which, according to the intention of the Act, those cases in which resort must be had to the Court of Equity, where by a single operation justice might be done to all parties in interest, may be distinguished from the other cases, in which the order for sale made at law would be adequate. I do not profess to be familiar with equity practice, and do not feel that any doubtful proposition is necessary to the support of the general opinion which I have upon the matter in hand. But upon this, which is the main head of the argument I have to meet, some reference to equity practice, and some alternative views of matters, upon which two opinions may be held, will serve to show that the division of cases between the two Courts, which has been imputed to the Legislature, however specious, is not sound.
A Court of Equity, dealing with a common law mortgage, does not, in general, consider any person entitled to redeem, besides those who can show a title to the estate of the mortgagor, (the equity of redemption;) if there be fraud or collusion to the detriment of third parties,(b) as if assignees, executors, or trustees refuse to enforce their right, creditors or other parties interested may file their bill for relief.(c) *710 Judgment creditors, wbo bave an equitable lien on the mortgagor’s equity of redemption, coming in to redeem, must make the persons legally entitled to the equity of redemption,(a) such as executors or assignees of a bankrupt, parties to their bill. In a bill for foreclosure, .parties should be made of all persons directly interested in the result — the persons entitled to either the legal estate, the money, or the equity of redemption. The eldest mortgagee has the legal estate, and he only can have such a foreclosure as establishes an indefeasible, irredeemable legal title : persons who became mortgagees or assignees of the equity of redemption, or creditors by judgment against the owner of it, after the filing of the bill, are affected by the notice which arises from lis pendens, and are bound by the decree without having been made formal parties. With respect to all intermediate en-cumbrancers, the rule appears to be that the decree of foreclosure will bind all those who are,parties to the bill, but not the rest ;(b) and, consequently, a second mortgagee or other subsequent encumbrancer, who is not a party to the bill, may, on ..payment of the first mortgage debt and costs, redeem the first mortgagee, after the decree obtained, although the first had no notice of the other incumbrance at the time of the decree. To the conclusive adjudication of the rights brought before the Court, it is not indispensable that parties should be made of the representatives of all the rights,(c) which the Court, in its desire to do full justice and prevent circuity, would require to be presented, if they were known to it. Thus, it is good cause of demurrer to a bill of foreclosure filed by the heir of the mortgagee, that the executor of the mortgagee is Dot a party ;(d) and even if the bill be not demurred to, but it comes out in the course of the hear *711 ing that tbe executor is not a party, tbe plaintiff cannot, it seems, be permitted to proceed; but, nevertheless, if tbe cause proceed, and a decree is obtained by the heir of tbe mortgagee without tbe executor, it will be binding on the mortgagor; and it seems tbe heirs of tbe mortgagee may either pay tbe mortgage debt to tbe personal representative. or give up tbe estate.
A sale for satisfaction of a mortgage is in its nature a more conclusive proceeding than a simple foreclosure, and it introduces tbe rights of a new party — the purchaser. It is therefore important that all persons who should have been parties to a foreclosure, should be before tbe Court when it orders a sale. And this is made still more imperatively necessary by tbe character of tbe decree usually rendered by our Court of Equity, for a salé and tbe payment of tbe balance, if any — to tbe mortgagor or other person entitled, if there should be a surplus after satisfaction of tbe mortgage ;(a) — by the mortgagor or bis representative, if there should be a deficiency after sale. Therefore, the executor of a mortgagor, not an indispensable party to a bill for foreclosure, should here be a party to a bill for sale and payment.(b) But the judgment creditors of the mortgagor, and of his immediate alienee, and of a subsequent alienee of the land, (now the owner of the legal title,) through whom may be numerous legal liens on the land, would probably not without some special equity be h'ere considered necessary parties, even since the Act of 1791 ;(c) every creditor being usually understood to be represented by his debtor, who, if entitled to either the money or the land, should himself be before the Court. The terre *712 tenant, tbe mortgagee would be always justified in making a party ;(a) for wbat tbe nature of his right the mortgagee may not know, and, as far as practicable, the price should be advanced at the sale, by quieting all apparently opposing claims. But if it should appear to the Court that the terre tenant's interest is only that of a tenant at will, or a tenant for a year, whose term would expire before the sale, justice in the particular instance would be sacrificed to the preservation of valuable formalities, if delay should be had to make him a party. Suppose, however, that the fact of there being a tenant, or a vendee of the mortgagor, should not be brought to the knowledge of the Court, and under a bill by mortgagee against mortgagor, a decree and sale should take place — what would the purchaser acquire ? The decree would be good between the parties, and the purchaser would acquire all that their conjoint rights could, at the filing of the bill, have conveyed.(b) A title or incumbrance superior to the mortgage, whether derived from the mortgagor before execution of the mortgage, or paramount to his title, would be unaffected by the sale. If lessee for a term was in under a lease prior to the mortgage, and that was in fee, the purchaser would acquire the mortgagor’s reversion. If there had been a lease or sale by the mortgagor subsequent to the mortgage, and no default of registration had caused a transposition of priorities, the purchaser would acquire, by relation to the date of the mortgage, a right to the land and to the immediate póssession of it, if the legal title was in the mortgagor at the filing of the bill. If the legal title were then in a third person, perhaps he would acquire only the mortgagee’s rights against that person; possibly, as hereafter mentioned, only an equity to be reimbursed out of the land the amount of 'his bid, not exceeding the mortgage debt. Where he acquired the right to immediate possession, he could not enforce it, under an order of possession contained in the decree, against any person who *713 was not a party or privy to the bill, or affected by tbe notice arising from lis pendens. He could, however, assert bis right by action against any occupant who resisted it; although against any person who could not, as above, be turned out under an order, the decree would not be conclusive, and he would be compelled to establish by evidence aliunde the execution of the mortgage, and subsequent entry under the mortgagor; and would be liable to any defence that might show invalidity of the mortgage for fraud or other causes, or its discharge by payment or other means. The chief difficulty is, that the purchaser might be liable to redemption or disencumbering (one or the other, according as he should, or should not, be held to have acquired the legal title) by any person who held the mortgagor’s legal estate, or a specific lien on it, and had not, by being made a party, received regular notice of the sale before it was made. I am aware that a notion has prevailed, and to some extent is countenanced by dicta in our reports, that registry is such effectual notice to all the world that a purchaser from the mortgagor, when the mortgage has been duly registered, not only takes subject to the lien of the mortgage, but is made a privy so as to be bound by proceedings against the mortgagor. If this is correct, there would rarely be an occasion for a purchaser to desire more than a decree against the mortgagor. Sometimes a mortgagor’s vendee may have peculiar claims to favor, as where he bought without notice of the mortgage, after its execution but before its registration, and before the expiration of the prescribed time for registration, within which time it was registered. Beyond such special cases there seems, however, in general, great force in the reasons which every vendee of a mortgagor might urge, in support of his right to redeem or disencumber, after a sale under proceedings to which he was not a party. He might well say that registry, although notice to prevent the acquisition of priority by a subsequent conveyance, and to rebut a plea of purchase for valuable *714 consideration without notice, (a) is not notice for all purposes; that notice of an instrument claimed to be a mortgage being registered, may be accompanied by notice that it is forged, or fraudulent, or paid, or released, or otherwise invalid; that after a mortgagor’s conveyance of the land, his vendee should no more be bound by his acknowledgments, default, or unsuccessful defence, than by his second conveyance, or his direct collusion with the mortgagee; and that as, in conformity with the indulgence which in equity was intended to prevent forfeiture upon breach of the condition, an express notice to the mortgagor is required by the Act of 1791 as well as by equity practice, giving him full opportunity for payment before the sale, so the same notice and opportunity should be given to a third person who has acquired the mortgagor’s estate with its incidents, before he should be barred ■of his right to disencumber or redeem.
Admit then that when a sale has taken place u,nder a ■decree made- on a bill by mortgagee against mortgagor, a vendee of the mortgagor, not a party to the bill, may hold .the land by paying the mortgage debt. If the purchaser has bid j ust the amount of the mortgage debt and costs, (b) the sale is in effect an assignment of the mortgagej and upon the vendee’s payment, the purchaser would be reimbursed although disappointed of his purchase. If the purchaser has bid less than the mortgage debt, and the balance has been collected from the mortgagor’s other assets; the purchaser may possibly be restricted to reimbursement of his bid, by an equity which would be in either the mortgagor or his vendee, according to the circumstances which should or should not make the vendee’s title subject to the obligation of paying the mortgage debt.(c) And if the purchaser has bid more than the mortgage debt, and the excess has been ap *715 plied to judgments against an insolvent mortgagor, the purchaser’s reimbursement may be limited, by the extent of the vendee’s liability, to a sufficiency to satisfy the mortgage.
It is plain that there are cases where conflicting claims and complicated circumstances would so depress the price, if all parties in interest were not bound by the proceedings, that it would be expedient for a mortgagee not only to resort to the Court of Equity, but to be careful that all persons interested should be concluded by the decree. And it is not doubted that the Court of Equity would be watchful to have all proper parties brought before it, and where existing interests had in the progress of a cause been concealed from its view, would protect them when afterwards they should claim recognition. But a decree had between mortgagee and mortgagor only, would bind them, and under it there would usually be a saleable interest from which sometimes a mortgagee might obtain satisfaction, without injury to the purchaser, the mortgagor or any other person, although a third person might have an interest in the land sold.
Most of'the remarks that have been made concerning a decree in equity for sale, apply to an order for sale made at law under the Act of 1791. The difference between the two Courts, in reference to this subject, is in practice not in principles. Notwithstanding the fullest exertion by the law Court of all its power under the Act, there would be cases where adequate relief could be had only in equity; other cases might suggest a wish that the rules of the law Court were better adapted for applying on all suitable occasions, the new remedy which the framers of the Act seem to have thought so valuable. But even if the practice now prevailing under existing rules be taken as an exposition of the Act, an order of sale would have at least the same effect as a decree between mortgagee and mortgagor ; it would be conclusive of all rights subsequent to the date of the mortgage under an extreme opinion as to the efficacy of registry: *716 ■under a contrary opinion, it would be subject to tbe rights of persons who were not parties or priviesit would be rarely unproductive to the mortgagee, never absolutely nugatory.
What has been said must have already suggested the reflection that the distinction between cases founded upon the circumstance of the mortgagor’s being out of possession, does not correspond with the other distinction between cases where complete justice cannot be done by proceedings between mortgagee and mortgagor, and those where it can be. Why should the case of a vacant possession differ from one of actual occupancy by the mortgagor ? No third pérson may be concerned in either, and title gives legal possession. Why should a tenant at will,- or tenant for a year, or other temporary occupant holding under the mortgagor, deprive the law Court of jurisdiction, and divest the mortgagor of his legal title ?(a) A purchaser and everybody else may know that no ‘opposing right will be set up, or if it should be, that it would be easily overcome. If every ierre- tenant shall be presumed to have an opposing right, does the rule embrace an overseer of the mortgagor upon a plantation on which the.mortgagor does not himself reside ? If the existence of right in a third person renders the case unfit for a law Court, what principle is there which makes such existence less influential when it is clearly proved by other evidence, than when it is presumed from possession ? A mort. gagor may be out of possession (in the sense attributed to that phrase in Stoney vs. Shultz,) and yet a purchaser be willing to give the full price of the land for a title to it, made by the conjoint authority of mortgagee and mortgagor. More than that, a mortgagor may remain constantly in actual occupancy, and yet important rights -in the land subsist in third persons. Take the case- of a 'second mortgagee or of a vendee of the mortgagor by whose permission the mortgagor continues in possession. Both of these cases would be con *717 sidered as coming witbin tbe Act, and in both, the Court of Common Pleas, according to its present practice, would order a sale; yet in both there are rights of a third person, which equity would not conclude without a hearing.
In referenc to Judge Nott’s remarks made in Durand vs. Isaacs, it is easy to see -that the law Court would make no nugatory order for the sale of “ a man’s property who was not before the Court,” but would order the sale of the interest which was''mortgaged: and if that man’s property is subject to this interest, the purchaser would acquire some superiority. The man in possession, even if he bought bona fide without knowledge of the mortgage would after the sale be in a condition similar (not worse, probably better,) to that of one whose land without actual notice to him had been sold under a judgment that had lien on it when he bought it; the purchaser under the order for sale would, against every right of a third person derived from, the mortgagor, have much better chance of indemnity, than he would have had against a defect in the debtor’s title, if he had purchased land under a fierifacias.
So as to the purchaser’s acquiring merely a right to bring a possessory action for the land, it may be observed that in no case could a purchaser under an order for sale made in the Commdn Pleas, if resisted, come to enjoyment without an action. He would be obliged to 'bring possessory action against a mortgagor himself, who refused to yield possession, even where no right of a third person was pretended, unless perhaps.the Court of Law, altering its rules, should do what it never yet has done, give to him. such order and process for enforcing the delivery of possession as a Court of Equity will in a proper case give after a decree for sale.(a) The right to bring and to maintain a possessory action is often the first fruit of a title the most perfect.
When it was said that the purchaser would acquire nothing more than a right to bring a possessory action for the land, *718 "which is still reserved to the mortgagor by the Act" I think there must have been some inadvertence. ' If the case was a proper one for the action of the Court, and the order was made against the mortgagor, defendant in the suit, it would bind him, and it cannot surely have been meant that in that case the land would, after sale, be still reserved to him by the Act. If a third person’s being in possession rendered the case unsuitable for the Court, then the argument was, that the Act did not apply to it at all, and consequently the land was the mortgagee’s. Has mortgagor been misprinted for mortgagee ? The land is never reserved to the mortgagee by the Act; if by reason of the inapplicability of the Act the case, the legal title was in the mortgagee, a sale under proceedings between him and the mortgagor would amount to a sale made by his agent, and the purchaser would acquire at least his estate — the legal title subject to redemption by a third person who had the mortgagor’s equity. Was mortgagor used to include all persons who had the mortgagor’s right, and by land was the equity of redemption meant, as reserved ? That is not reserved by the Act. Or was it the right to bring a possessory action and not the land or the equity, which was meant as reserved, and as reserved to the mortgagee ? This is not given by the Act, and would pass to the purchaser with the legal estate.
I am persuaded that no division of cases between law and equity, founded on the circumstance of the mortgagor’s being out of possession, was ever thought of in the framing of the Act of 1791, and that no respect for the rights of either of the original parties to a mortgage, or of a purchaser at a sale for satisfaction, or of any third person, -could have suggested an exception from the Act of all cases where that circumstance, as it has been understood, should be found to exist. ■
What then was meant by the exception, “ when the mortgagor shall be out of possession?” With less confidence than *719 I feel in rejecting tbe constrnction heretofore given, I venture to offer another.
I think that the exception was meant either to refer exclusively to a state of things existing at the ratification of the Act, or to such present and future extinction of the mortgagor’s' rights as rendered inappropriate the ownership in him which was enacted as the general rule. There is doubt, therefore weakness, shown by two explanations of that which has but one meaning; yet I exhibit this weakness, because .the subject admits of no absolute certainty. These two explanations are closely allied, one or the other may meet with favor, according to the preconceptions of different persons, and both are free from such decided objections as I have urged against that which has been adopted. Both are very simple, and they may have been overlooked on that account.
Before the Act, the circumstance of the mortgagor being out of possession was not unknown to the law of mortgage, and although the penman of the Act was neither a careful writer, nor probably a well drilled practitioner of the law, I conceive that he was a man of liberal views and general information. He may be, upon good reasons, presumed to have understood that the statute of limitations would not run against the mortgagor’s equity of redemption, so long as any portion of the land remained in the possession of the mortgagor or his heir, but would run when the mortgagor was out of possession; (a) and further, that possession is actual or legal — in deed or in law — and may be held by title only where there is no opposing occupancy, or by agent or lessee; so that the statute would not run against the equity of redemption so long as any portion of the land was held by any person claiming for or under the mortgagor. Having a general knowledge of the pre-existing law, the legislator turned the mortgagor’s equity into a legal estate, and left to *720 the mortgagee only a right to obtain satisfaction by sale of the land: and when naturally he desired to guard against any mischievous operation of these changes, no expedient was so likely to occur to him, according to the usual course of parliamentary composition, as a “ provided always, that nothing herein contained.” How far shall the state of things now existing be disturbed? may have'been asked. The answer, it may well be supposed, would have been of this kind: “ Suits already commenced by the mortgagee for the land (perhaps, too, suits for the mortgage debt) shall not be affected —inducements heretofore held out to foreign creditors shall be unaltered, no person shall be deprived of any right that he now has. Eight, however, is different from remedy; it does not include the mortgagee’s legal capacity to take the 'profits or sue for the land, or any other privilege which is merely remedial; the real rights are, on one hand, to the money, and on the other to have the land after payment.(a) If this is not so, why say any thing about suits pending, (whether for land or money;) present rights, in their large sense, would cover all; and if the Act is not to extend to any mortgage now existing, of course it cannot extend to any suit heretofore brought by the mortgagee.” When, as I suppose, with this understanding of rights, pending suits were excepted, possessory actions already terminated by judgment or by delivery of possession to the mortgagee, would naturally have been thought of. Shall the mortgagor be owner of the land in these cases? “Surely not; nor in cases where the mortgagee has entered upon land never occupied by the mortgagor, or land from which the the mortgagor has voluntarily withdrawn or been rejected. In all such cases the mortgagor must rely, as heretofore, upon his equity of redemption.” Such cases would all be cases where the mortgagee’s possessory right had already been exerted, and would *721 all be included under the phrase, “the mortgagor out of possession;” giving to the word possession its largest signification, and under the word mortgagor, including here, as in other parts of the Act, every person claiming under the mortgagor. With the meaning and purposes which I have thus indicated, I suppose the penman of the Act to have drawn the proviso. He awkwardly used first the term now, and soon afterwards the words “ at the time of passing this Actand as, I think, with some vague conception of a future being referred to by the latter form of expression, and probably with a remembrance of the “shall or may,” so common in legislative language, he wrote “mortgagor shall be out of possession,” when he meant may he out, or is out. This is an inaccuracy not greater than the Act exhibits in other instances that have been pointed out; and it seems to me strange that an important distinction, amounting to a repeal of the Act in almost half of the cases embraced by its other words, should by ingenious speculations, be built upon the use of one auxiliary verb rather than another by a slovenly writer. A slight confirmation of the meaning which this explanation gives to the exception, may be drawn from the close connection of the first two clauses of the proviso, shown by the conjunction or, whilst between them and the others, and between the other two, the disjunctive nor is used, (inaccurately, as the sentence is formed.)' It is as if the writer had said, this matter shall not extend to either of these two, nor to that, nor to that.
It may be, however, that present rights, as a general phrase, did include the superfluous particulars of pending suits before mentioned, and that the Act was not expected to embrace 'pre-existing mortgages. I ought to think so, for so it appeared as a plain matter of course to Chancellor Harper’s discriminating mind. (Drayton v. Marshall, Rice Eq. 383.) What then did “ when the mortgagor shall be out of possession” mean ? Something future; but it may be something which will appear plain to those who adopt the signification *722 of possession and mortgagor before given. The Act of 1797, removed doubts about what it calls the release of the equity of redemption; but it cannot be reasonably imputed to the framer of the Act of 1791, that be intended to enact, that a conjunction of the rights of mortgagor and mortgagee in the latter should not make him owner of all that pertained to both. It could not have been intended to extend the rule that “ the mortgagor shall be deemed owner of the land” to cases of such conjunction, either before or after the passing of the Act, effected by release, conveyance or other means. All such cases may well have been considered as coming under the phrase “mortgagor out of possession:” that is where neither legal nor actual possession would be in the mortgagor or any person deriving right from him. All conceivable transfers to the mortgagee, or his representative, by the mortgagor or his representative of the rights which the mortgagor had immediately after the execution of the mortgage, ought of course to have been excepted from the general rule of ownership which was enacted: no other words in the Act except them, and they may all come under the words, “ when the mortgagor shall be out of possession.
It will be seen that I consider the question, whether the proviso extended to the first section of the Act as well as to the second, unimportant. I conceive that it imposed restrictions upon the general rule enacted in the second, and that to cases out of the general rule the remedy given by the first was not expected to apply, and would be ill-adapted.
To paraphrase the second section so as to express my sense of its meaning, I would write it' thus, giving to mortgagor and mortgagee the signification before explained:

The mortgage shall he deemed a mere security for the debt intended to he secured by it; and the mortgagor shall he deemed owner of the mortgaged land, until it may he s-old for satisfaction of the mortgage debt. The mortgagee shall he entitled to obtain satisfaction out of the land by sale, hut shall not be entitled to 
*723
maintain any possessory action for the land, even after breach of the condition specified in the mortgage. Provided that nothing herein contained, introductory of change, shall extend to actions now pending, or to cases where the mortgagor's right of possession shall have ceased, or to an ordinance, &c., or to any rights now existing.

These remarks have been prolonged far beyond wbat I expected when I began. I fear that tbis case will induce still wider departure from the simple rule that the Legislature intended to establish. I think that I foresee the irregularities, the shifting and uncertainty of titles, the defeat of liens, and the confusion that will ensue if the distinction shall long continue to prevail, which has grown out of the first consideration that was had of a few enigmatical words in a Statute. Therefore I have expressed my strong convictions of error adopted at the start, which is necessarily progressive, and at every step must go farther astray. If the error is only in myself, my efforts can do no harm: but if by them others should be incited to the discovery of the truth, a mischievous course of decision may be arrested. It is usually wise to adhere to what is settled, even when its propriety is doubted: but sometimes it is better to correct an error, than to persist in working out, by logical deduction, all the evil consequences to which it may lead.
WhitNEB, J. I concur in the views here presented.

Motion dismissed.

(a) The following are copies of the Acts of 1791, and 1797, referred to in this opinion.
“ An Aotfor establishing an easier and cheaper mode ofrecovering money secured by mortgage on real estates ; and barring the equity of redemption; and for abolishing the fictitious proceedings in the action of ejectment.
‘‘Whereas, mortgages are generally meant merely as securities for debts, and no actual estate is intended to be conveyed by the mortgagor to the mortgagee, but the mortgaged estate is intended, and ought to be considered, only as a pledge for the payment of the principal and interest due on the debt meant to be secured; and whereas, the present mode of foreclosing mortgages of real estates is tedious, and expensive, and the right of the mortgagor to his equity of redemption is, in the present mode of exercising that right, attended with inconvenience: Now for the easier and speedier advancement of justice, in obtaining the payment of debts secured by mortgage, and for ascertaining when the equity of redemption of the mortgagor shall be barred.
“ 1. Be it enacted, by the Honorable the Senate, and House of Representatives, now met, and sitting in General Assembly, and by the authority of the same, That on judgment being obtained in the Court of Common Pleas on any bond, note, or debt, secured by mortgage of real estate, it shall, and may be lawful for the judges of the Court of Common Pleas, in case of any judgment having been obtained subsequent to the property being mortgaged, and prior to the obtaining judgment in the action hereby allowed to be commenced, to order the sale of the mortgaged property for the satisfaction of the monies secured by the said mortgage, and to give a reasonable extension of the time when the sale is to take place, not exceeding the term of six months from the judgment, and also to give a *692 reasonable credit on the sale of the mortgaged premises, not exceeding the term of twelve months from the sale; and the mortgagor shall be forever barred, and foreclosed by such sale from his equity of redemption in as complete a manner, as if the same had been foreclosed in a Court of Chancery; any law, usage or custom to the contrary thereof in any wise notwithstanding. Provided always, that if at any time, before such sale, the mortgagor shall tender to, or pay into the bands of the plaintiff, or liis agent, or attorney, or to the sheriff, all the principal money, and interest meant to be secured by such mortgage, and also the costs of the suit, the sale shall not take place, but the mortgagee shall enter satisfaction on the said mortgage, and the mortgaged premises shall be forever exempt from the said mortgage.
c< 2. And be it further enacted, by the authority aforesaid, That no mortgagee shall be entitled to maintain any possessory action for the real estate mortgaged, even after the time allotted for the payment of the money secured by the mortgage is elapsed; but the mortgagor shall still be deemed the owner of the land, and the mortgagee as owner of the money lent, or duo, and shall be entitled to recover satisfaction for the same out of the land, in the manner above set forth. Provided always, that nothing herein contained shall extend to any suit or action now pending, or when the mortgagor shall be out of possession, nor to contravene in any way the ordinance entitled “An ordinance to encourage subjects of foreign States to lend money at interest on reál estates within this State,” nor to deprive any person or persons of any right which he, she, or they may have at the time of passing this Act.
(e 3. And be it further enacted, by the authority aforesaid, That where the same lands are mortgaged at divers times, the debts meant to be secured by such mortgages shall be paid in the order the same are recorded agreeable to law, and in no other order; any law, usage, or custom to the contrary thereof in any wise notwithstanding.” — Act 1791,5 St at. 169.
“ An Act to explain and amend the Act entitled (An Act for establishing an easier and cheaper mode of recovering money secured by mortgage on real estates, and barring the equity of redemption; and for abolishing the fictitious proceedings in the action of ejectment/
<e Whereas under the Act entitled s An Act for establishing an easier and cheaper mode of recovering money secured by mortgage on real estate, and barring the equity of redemption; and for abolishing the fictitious proceedings in the action of ejectment/ doubts have arisen whether a mortgagee taking a release of the equity of redemption from his mortgagor, can be considered as legally and fully seized of the premises mortgaged, inasmuch as that Act discloses that the premises mortgaged are still to be deemed the estate of the mortgagor, and only a pledge in the hands of the mortgagee, who is not thereby vested with any legal estate, and therefore cannot bo benefited by such .a release.
“ 1. Be it therefore enacted, by the Honorable the Senate, and House of Represen *693 tatives, now met, and sitting in General Assembly, and by the authority of the same} That all releases of the equity of redemption, made since the passing of the said Act, or hereafter to be made, shall have the same force and effect in law as if the said Act had not been passed.” — Act 1797, 5 Stat. 34.

(a) Miller's Comp. 16, 24, 39.

(&) See Bourdeaux ads. The Treasurers, 1825, 3 McC. 142.

(a) 4 McC. 340 ¿ Coote on Mort. 53-6.

(a) Cootie on Morí;. *516, *352.

(a) Coote on Mort. *512; Riley’s Ch. Cases, 110.

(a) 1 Strob. 308.

(a) 1 McO. 344; 4 MeC. 341; 5 Rich. Eq. 1.

(a) 4 MoC. 265.

(a) Cont. 3 McC. 146.

(6) Coote, *531.

(c) Barnard R. 30.

(а) Coote on Mort. *552, *55.

(b) Coote, *522; 2 Vern. 518; Calvert on Parties in Equity, ^128 — 137".

(c) 2 Hill Ch. 87; 11 Wheat. 304.

(d) Coote, *519.

(a) Gray vs. Toomer, 5 Rich. 266; Bail. Eq. 220; Riley’s Ch. C. 120 ; 1 MoC. Ch. 227.

(b) 3 P. Wms. 333, in notes; Riley’s Ch. Cas. Ill; MoM. Eq. 188.

(c) See Haines vs. Beach, 3 John. Ch. 469 ; Finley vs. U. S. Bank, 11 Wheat. 304; Bank vs. Black, 2 McC. Ch. 344; Felder vs. Murphy, 2 Rich. Eq. 68; Rice’s Eq. 393; 2 Rich. Eq. 185; 5 Rich. Eq. 1.

(a) Cruger vs. Daniel, McM. Eq. 396, 174.

(b) Bail. Eq. 338.

(а) Bail. Eq. 422.

(b) 1 Hill, Oh., 499.

(c) 2 John. Ch., 128; 5 Rich. Eq. 1.

(a) 2 McO. 146.

(a) Blake vs. Scriven, 2 Hill, 312.

(a) Powell on Mort. 427',* Sel. Ch. Ca. 55 ; 3 Atk. 225.

(a) McM. Eq. 13.