Johnson, J.
Both parties have appealed from the decree of the Circuit Court, and the grounds stated open for consideration most of the leading points in the cause. I propose to consider them in the order in which they are put down in the brief, beginning with those of the defendants, as going more directly to the merits.
The first and second may be resolved into the general question, whether the mortgage to Brooks and Moore’s judgment can be set up as a lien on the Leigh tract of land generally, and more particularly, whether the mortgage can be set up in opposition to the rights of those who purchased lots from Shultz before the mortgage was ordered to be foreclosed. 1. The very able argument of the Chancellor in support of his views of this question, vindicates, very satisfactorily, his order setting up those liens. I will notice, however, some. of the arguments which have been urged by the counsel in support of this ground of the motion with great apparent confidence. The most prominent are, first, that Williamson having purchased with notice that the sale was premature and irregular, is not entitled to relief: Secondly, That all that Williamson can claim is to be put in the same situation that he would have been if the sale had been regular and valid, and that according to this rule, he would only be entitled to have the mortgage set up against the unsold lands, because the law Court had no authority to order the foreclosure as to the lots which had been sold.
1. The general rule very clearly is, that there is no implied warranty in sales made by a sheriff or other ministerial officer in his official capacity, but that applies exclusively to the quality and property of the thing sold. Thus *in a sale made by a sheriff of goods taken in execution, there is no implied warranty, on the part of the sheriff, that the goods are intrinsically worth anything, or that the defendant has any property in them. He only undertakes to sell the interest which the defendant may happen to have in the goods, in the condition in which they are. .But the principle does not apply to cases where the sheriff or other officer assumes an authority where none is given by law. It will hardly be questioned, that if a sheriff induce persons to purchase at his sales, by pretending that he has the authority of law for the sale, when in truth he has not, the purchaser must be without remedy. It is a fraud for which he would be responsible, and the principle equally applies when he acts upon a void authority. In any case the sheriff is bound to show that he is legally authorized to do that which he assumes to do virtute officii. The case in hand does not entirely depend even on that rule. In his deed to Williamson, the sheriff recites the order of foreclosure of Spring Term, 182Y, the sale on the first Monday in June, thereafter, and the failure of the purchaser to pay the purchase-money according to the terms of the sale, the advertisement of the subsequent sale, and the sale *336 to Williamson — and in pursuance thereof he undertakes to convey. ' Here there is an express declaration on the part of the sheriff of his authority to sell, and although it is stated by way of recital, he is as effectually estopped as if it had been in the form of an express covenant. Com. Dig. Estopel, B. 5. Buller N. P. 298. In effect it is a covenant on the part'of the sheriff that he has authority to sell, and the same thing is implied in every sale he makes. Conceding, then, Williamson had notice of the circumstances from which the want of authority to sell has been deduced in the case of Williamson v. Farrow, here is the guaranty of the sheriff against the consequences. One of two persons who are equally confident of their title to the same article of property, undertakes to sell it to a third who knows all the circumstances, and covenants to warrant the title — did any one ever yet suppose that he would not be bound by that warranty. In principle this is that ease. The sheriff, supported by *Brooks the mortgagee, undertook to sell the land; Shultz denied their authority, on the ground that the time for the payment of the money had not passed. Was Williamson obliged to sit in judgment on this controversy, and decide at his peril ? Might not the sheriff covenant for his authority to sell ? And is he not bound ?
2. The authority of the Law Court to order the foreclosure of mortgages on lands is derived from the Act of 1T91, and in that Act there is an express proviso, that nothing therein contained shall extend to any suit or action then pending, “or where the mortgagor shall be out of possession.” But this I regard as wholly unimportant to this branch of the case. The complainants do not ask to have Williamson’s purchase carried into effect. That was adjudged against him in Williamson v. Farrow— he took nothing by the purchase. But upon the principle before laid down, they have the right to ask to be reimbursed the sum which Williamson paid. It is money paid on a consideration which has wholly failed, and upon the plainest principles of common sense and common honesty, they are entitled to recover it back. Primarily the sheriff is liable, because it was he who received the money and guaranteed his authority to sell. Upon the same principle Brooks too is liable, for the sheriff acted under his authority and for his benefit, and paid the amount of the mortgage to him. It seems also that Brooks received it in the capacity of Commissioner in Equity, and in his answer he states that he had paid it over to the persons entitled, and against them he has an unquestionable remedy. The same thing may be said of the amount paid on Moore’s judgment, and the object of this bill is not as the argument supposes — a claim on the part of the complainants to be subrogated to the rights of the mortgagee and the judgment creditor, but that the multiplicity and circuity of action which would be necessary in a Court of Law may be avoided and justice done to all the parties at once, that the lands may now be sold to satisfy the mortgage and judgment, in relief of the mortgage and judgment creditor — and it may be asked what wrong is done to the defendants by this mode of ^proceeding. In the end the money due on the mortgage and judgment must be paid, and that is all that is claimed now.
The third and fourth grounds of the defendants’ motion call in question the legality of the order of the Circuit Court setting up the judg *337 ments on the Bridge Bank Bills assigned to the plaintiffs, particularly in opposition to the rights of the lot-owners who purchased from Shultz.
The argument in support of these grounds assumes that these judgments were a lien on the Bridge at the time the defendants (the lot owners) purchased from Shultz, and that the release of it by Paul Fitzsimons, operated as a fraud on them, as it operated to exempt a fund primarily liable, and threw the burthen on the individual property of Shultz.
If this assumption was supported by the facts, I should be inclined to think with the defendants’ counsel, that the judgment creditors ought to be left to their remedy against that fund, or having released it, they are without remedy. The judgments were for parnership debts. The Bridge according to this allegation was partnership property and liable to the judgments. The defendants, the purchasers of lots from Shultz, claim that the judgment creditors may exhaust that remedy before they resort to the property purchased by them. I need not resort to authority to show that a judgment creditor will be compelled to resort to the property of the debtor to satisfy his judgment in relief of property purchased from him by a stranger; and this is, as I understand it, the case made by the facts assumed. They are not however supported by the proof.
The property in the Bridge was in John and Barna M’Kinnie, who constituted at that time the Bridge Company. They mortgaged the Bridge to the Bank of Georgia, on the 10th June, 1819, to secure the payment of $98,000; and on a bill filed in the Federal Court at Savannah to which the judgment creditors and Shultz, the Bank of Georgia and John and Barna M’Kinnie, were parties — an order was obtained by consent that the Bridge should be sold and the money brought into Court. On the 28th Nov. 1822, it was accordingly sold, and purchased by the Bank at-^IOjOOO, being $28,000 less *than the amount of their mortgage, and the proceeds were, by the order of the Court, deposited in the Bank. That bill was afterwards dismissed for want of jurisdiction, but if the Bridge Company had at that time any property in the Bridge, it was divested by the sale. If we are referred to the fund in Bank arising from the sales of the Bridge, that is swallowed up by the prior lien of the mortgage.
An entry made in the books of the Bridge Bank, pledging the Bridge amongst other things for the redemption of the bills issued by the Bank and on which these judgments are founded, is set up by the defendants as a lien on the Bridge, as paramount to the mortgage, being anterior in point of time. This is well answered in the Circuit Court decree. There was no evidence that the Bank of Georgia had any notice of this entry. In itself there was nothing to divest the Bridge Company of the property in the Bridge. Conceding that it possessed all the requisites of a legal and binding contract, from the nature of it, the right and power of the disposition of the Bridge must have been reserved to the Bridge Company ; for that was the only mode in which they could make it available in the payment of the bills, and they alone are responsible for the disposition they made of the proceeds. The sums paid to Shultz and Fitzsimons cannot be otherwise regarded than as the price of peace. The sum received by Fitzsimons was properly ordered to be credited on the judgments. It was paid on that account, and although by a stranger, supposing it even voluntary, it is pro tanto a satisfaction.
*338 The fifth and sixth grounds of the defendants’ appeal, object to the amount and disposition of the rents made in the Circuit Court decree,, and may be conveniently considered in the same general view.
At the common'law there is no question that as mortgagee, Brooks was entitled to the possession of the land after .the condition of the mortgage was broken, or that he might have maintained a possessory action against the mortgagor or any one else in possession, and was entitled to enter upon a vacant possession ; and if a mortgagee give notice to the tenant in possession,' that the money secured by the mortgage has *not keen paid, the tenant is bound to account with him not only for the accruing rents but for the rent in arrear; and the mortgagee may resort to the summary remedy by distress, and in Moss v. Gallimore, Doug. 270, Lord Mansfield says, that he considers “this remedy a very proper additional advantage to mortgagees, to prevent collusion between the tenant and the mortgagor.” Thus stood the common law, and according to this rule there is no question about Brooks’ right to receive the rents after notice to the tenants that the money due on the mortgage was unpaid.
We are next to inquire whether the Act of Assembly of 1791, has made any change in the common law in this respect. That act seems to have been intended principally to give jurisdiction to the Law Courts, to enable them in a particular case, (the case where a judgment had been obtained against the mortgagor by a third person,) to foreclose the mortgage and bar the equity of redemption. But it goes on to declare, that “the mortgagee shall not be entitled to maintain any possessory action for the real estate mortgaged, even after the time allowed for the payment of the money secured by the mortgage is elapsed, but the mortgagor shall be deemed the owner of the land, and the mortgagee of the money lent or due;” and then follows a proviso, that nothing therein “contained shall extend to any suit or action then pending, or when the mortgagor shall be out of possession. ” A doubt has been thrown out, whether this proviso extends to the declaration, that “ the mortgagor shall be deemed the owner of the land,” and hence it was intended to be concluded, that the mortgagee could in no instance and under no circumstances maintain a possessory action, aiid could not therefore be entitled to rents and profits. The proviso follows the declaration in the same clause, and I cannot conceive of language more appropriate than that used to express the idea that not only that declaration, but the whole act should be inoperative when the morgagor was out of possession. And it has received that construction in the case of Durand v. Isaacs, 4 M’C. 54, in which it was ruled that the Law Court had no jurisdiction in cases of mortgages when the mortgagor was out of possession; and Judge Nott, in delivering the judgment of the Court in that *case, has given the most satisfactory reasons why the exception ought to 'have been made. I take it therefore as clear, that Shultz the mortgagor being out of possession, the rights and powers of Brooks as mortgagee, in respect to the purchasers of lots in possession under Shultz, must be determined according to the rule of the common law, and according to that he had a right to receive and retain the rents, having given notice of the mortgage to the tenants in possession.
*339 The question then arises whether Williamson and the plaintiffs, his representatives, are entitled to the same rights and immunities.
According to the preceding view, as between Brooks the mortgagee, and the assignees of Shultz, tenants in possession, the legal estate was in Brooks, subject to the equity of redemption, (a) He had therefore a right to convey the land itself, subject to this equity, or he might have assigned the mortgage, with or without having entered upon and taken possession of the premises.—Matthews vs. Wallwyn, 4 Ves. 118; Clute vs. Robinson, 2 John. Rep. 612. The sheriff, under the authority and by the direction of Brooks, did make a deed, by which he undertook to convey the fee in these lands to Williamson unconditionally; and although that was a greater interest than Brooks had in the land, the minor interest, whether of the legal estate subject to the equity of redemption, or the right to assign the mortgage whereby the legal estate would pass, was necessarily covered by it. In this view the sheriff must be regarded as the private agent of Brooks, and not as acting in his official capacity ; and if it be objected that his authority from Brooks was by parol, and void under the statute of frauds, it is an answer, that the facts are admitted by Brooks in his answer to this bill — a confirmation of the act. Williamson was therefore entitled to all the rights of Brooks, and necessarily to the rents The seventh and last ground of appeal on the part of *the defendants, complains of error in the decree of the Circuit Court, in not directing the sale of the lots in the order in which they were conveyed by Shultz, beginning with the last, and proceeding according to the order of the dates, to the first.
The counsel for the complainants have consented to a modification of the decree, according to this suggestion. I do not regard it however as depending entirely on the concession of counsel. As between the complainants and defendants the whole is equally liable, but amongst the defendants themselves, there is an equity which ought to be kept in view. Knowing of the mortgage and judgments, the first purchasers must necessarily have looked to the residue of the land as a security for the satisfaction of them. Every subsequent purchase diminished the amount of this security, and operated as a fraud upon the first purchasers.
I shall now proceed to notice the grounds of appeal taken on the part of the complainants.
1. The order that the land shall be sold on a credit of twelve months, as to three-fourths of the purchase money, is complained of as a violation of the obligation of contracts.
This order is in conformity with the practice of the Court of Chancery, both in this country and England. In the Act of 1191, before referred to, authority is expressly given to the Law Courts to give time for the payment of the money due on the mortgage, and a credit on the sales. It is founded, as I understand it, upon the principle of Equity, that the mortgagor has a right to redeem, at any time, until he is bound by the presumption arising from lapse of .time, according to the construction *340 of the contract, he has the right to redeem at an indefinite period, and it follows necessarily, that a sale on a limited credit is no violation of the obligation of that contract. I think also that it might be justified on the footing of a lex fori, for its use is universal, and co-existent with the Courts of Chancery over mortgages.
2. Notice to the creditors of Shultz to come in and prove their demands has been already twice given — once according to the answer of Boyce. ^7 Commissioners appointed* under the order of, the Court, and once under the order of the Court, and I have heard no suggestion that there are any yet to come in : and I presume that the order for the publication of further notice, and allowing time for them to come in, was made through abundant caution, and without the knowledge of the fact that notice had already been given. If there are other creditors, it is their own fault that they have not come in and proved their debts. They are not therefore entitled to the indulgence of the Court, nor ougtt the complainants to be longer delayed on that account — in this respect therefore the decree must be reformed.
3. The decree of the Circuit Court directs that the rents of the lots which have been sold by Shultz and improved by the purchasers, should be so apportioned that Williamson’s executors should take only the ground rent; and by the complainants’ third ground, it is understood that they claim to be entitled to the rents, as increased by the improvements.
There is apparently much equity in this order, and I am disposed to think it may be vindicated upon principle. There was no obligation on the part of Shultz to improve the lots, nor were the purchasers from him bound to do it. The mortgagee was, by the contract entitled to the land and the rents accruing from it, in the condition it then was, and no more. The improvements made did not diminish, but increased the value of the rents, regarding them merely as ground rents, and according to the principle of the order, the executors of Williamson are allowed this increased value. In doing justice to the lot-owners, even more than strict justice is meted out to Williamson’s executors.
4. The fourth and last ground is conceded by the counsel for the defendants — so much of the decree therefore as directs that Breighthaupt shall account for the $5000 which he received under the order of the Federal Court, must be reversed.
It is therefore hereby ordered and decreed, that so much of the decree of the Circuit Court as directs that the Commissioner shall advertise in the gazettes, for all the creditors who have not done so, to render in their demands by a day fixed by him — and so much thereof as directs a reference to ascertain* whether Breighthaupt received the sum ordered to be paid to him by the Federal Court, and what disposition he made of it, and what proportion of it should have gone to the credit of those iudgments: be and the same is hereby set aside and reversed.
And it is further ordered and decreed, that in executing the order for the sale of the Lehigh tract of land, the Commissioner do first sell the lots and lands whereof Henry Shultz was seized at the time he was admitted to the benefit of the “ Act for the relief of insolvent debtors,” the lots separately, and the lands not divided into lots, either in a body or *341 in parcels as he may judge most beneficial to all concerned; and next lots in the hands of purchasers, or so many thereof as may be necessary for the payment of all the liens established by this decree — reserving to Shultz’s alienees the right of priority amongst themselves according to their deeds — the lots held by subsequent deeds to' be sold before those held by prior deeds, and when two or more deeds have the same date, the Commissioner shall himself determine the order in which the lots shall be sold, reserving to the owners of the lots sold, the right of contribution from the owners of lots that it may be unnecessary to sell, if such should be the case. And to enable the Commissioner to carry this order into effect without delay, he is hereby authorized to require the owners of all lots to exhibit their title deeds or other muniments before him, at such times as he shall appoint — and if any difficulty should arise as to the order of the dates of the deed, he will report the same to the Circuit Court.
And lastly, it is ordered and decreed, that the decree of the Circuit Court, so far as the same is not inconsistent with this decree, be, and the same is hereby affirmed.
O’Neall and Harper, Js., concurred.

 But see the opinion of the Court delivered by Johnson, J., in Smith and Cuttino v. Osborne and others, ante, 342, where the reason given why the Statute of Limitations should not bar a mortgage lien, is that the legal estate is not in the mortgagee, even where (as in that case) the mortgagor was “ out of possession.”