The opinion of the Court was delivered by
Wardlaw, Ch.
This Court is satisfied with the conclusion and general reasoning of the Chancellor, and contents itself with making some observations on the grounds of appeal.
The first ground of appeal is, “because the order of January 7, 1838, required the Commissioner, as a condition precedent to paying over the funds to Valk and wife, that he should reserve a sufficient amount for the legacy to the plaintiff, and he has rendered himself liable by not performing the condition.” The order referred to is in the following terms: “In this case the assets, both real and personal, have been ordered to be paid and delivered into the hands of the Commissioner to abide the final decree. Since that order, it hath been declared that the defendant, Sarah Valk, is entitled to the residue of the real estate; and i't is but reasonable that she and her husband, Jacob R. Valk, should have the possession of so much thereof as may not be required to meet claims in the cause. It is therefore ordered and decreed, that the Commissioner retain in his hands a sufficient amount of the personal assets, and if they be insufficient, that he retain a sufficient amount of the real assets to cover any claim against the estate of Major William Wightman, whether for debts or legacies, or any other claim against the estate; and that he pay over and deliver the remainder of the proceeds of the real estate or real assets, to the defendants, Jacob R. Valk and Sarah, his wife, in right of his said wife, whether the same be in bonds or cash.” This order was expressly for the benefit of Valk and wife, to let them into immediate possession of the residue of the real assets of testator, without waiting for the realization or reduction into money of these assets; the Court intending to provide for claims of prior right, yet delegating to the judgment of the Commissioner the reservation of assets sufficient for the satisfaction of these prior claims. It would be a most harsh construction of this order to hold, that the Court designed to make the judgment of the Commissioner in reserving a sufficient amount for the satisfaction of debts and legacies dependent on the actual event of the sufficiency of *529 the reserved assets. This would make the subordinate officer of the Court an insurer of the ultimate realization of the assets reserved, or compel him for his own security to retain, in defeat of the advantage intended for Valk and wife, all the real assets until he actually received moneys enough for satisfaction of the debts and legacies. In execution of the order, the Commissioner retained cash $9,104 46, and real assets to the amount of $24,704 for the payment of the debts and legacies, (the personal assets,being insufficient) and all of these debts and legacies seem to have been discharged, except a balance of $654, with interest from August 28, 1850, due to the plaintiff. This balance, too, would have been satisfied, if one of the bonds reserved, that of William Burrill for $932, had been collected; and there seems no room for doubt that this bond was good at the time, and might have been reduced to money, if due and judicious diligence had been used. There is really then no ground for supposing that the Commissioner acted injudiciously in the reservation of assets, and it is not suggested that he acted with intentional unfaithful1 ness. The guardian of plaintiff was a party to the suit in which this order of Jandary 7, 1838, was made, and was bound to advise himself of its legal effect, and also to take notice of the master’s report concerning the execution of the order. If he was dissatisfied with the order, or its mode of execution, especially as to the payment to Valk and wife, and the sufficiency of the reservation of funds for the legacy to his children, it was his duty then to complain to the Court on pain of being afterwards estopped. This ground is untenable.
The second ground of appeal, conceding the sufficiency ox the assets reserved, affirms that the Commissioner did not use the diligence required of an officer of the Court in collecting these assets. This is the substantial question in the case, and is that which is most fully considered by the Chancellor. It involves the subsidiary question, whose duty it was, that of the Commissioner or of the guardian, to prosecute the remedy on Burrill’s bond, the only matter of contro *530 versy. In the Circuit decree, while the burden of the argument is that the guardian, and hot the Master, was bound to supervise the collection of the bond, the opinion is expressed that the guardian was not bound to receive any of the bonds in payment of his ward’s legacy; but it is manifest from the collocation of the remark and'from the whole train of reasoning, that the Chancellor did not intend to assert as a general proposition that a guardian is not under obligation to receive the estate of his ward in the form of investment, to which it is reduced by the decretal orders of the Court. He intended to say that the guardian was not bound to surrender any claim he might have against the Master for unfaithfulness in reserving sufficient bonds for the payment of the legacy, and that as this bond was prima facie larger than the share in arrear to his ward, the guardian was not bound to make himself the agent of other suitors for the collection of the surplus of the bond. As.is.said in Cason vs. Long, 4 Rich. Eq. 66, “ a guardian has plenary right to receive moneys coming to his ward, and to prosecute, compound and acquit any debt or liability accruing to his ward,” where he acts faithfully and without collusion ; and it is his duty to manage the choses of the infant according to the condition in which he finds them at his appointment, when this condition is lawfully produced by the action of an ancestor or other person, or of a competent Court. The Master here was not ordered by the Court to proceed'to the collection of the bond, and whatever he did in that respect must be treated as done as the. private agent of the-guardian. The guardian did not demand the bonds from the Master, and says in his testimony (which was taken by consent) that he does not know that he would have taken bonds if they had been offered by the Master. As is said in Thompson vs. Wagner, 3 Des. 94, it was his duty to collect the money when due or put the bond in suit, and to obtain the bond for this purpose. This case and McCauley vs. Heriot, Riley Ch. Ca. 19, in addition to the cases cited by the Chancellor, amply sustain his conclusion on this point.
*531 In relation to the third ground of appeal and the former portion of the fourth, if, may be remarked that if the Master assumed the management of this fund and instituted proceedings at law for collection of the bond and in'equity for the foreclosure of the mortgage, his interference was superrogatory, not required by any order of the Court, and in no respect superseding the power and duty of the guardian to supervise and direct the management of the fund. The necessary legal inference is that the action of the Master was directed by the guardian as his principal in a private agency; but the Master is pursued for negligence as an officer of the Court. It seems to be in vain to give caution to many persons that the action of the Court never professes to bind parties to suits beyond the legitimate interpretation of its orders and decrees, and not at all to conclude the titles of third persons who are not parties. In blind credulity they will conclude that wherever the Court or its ministerial officers touch any matter, a successful result is insured. Some purchasers at sales ordered by the Court, suppose that its orders are in rem, concluding the world, parties or not; and some parties to suits suppose that wherever the Court interferes at all, it undertakes to manage propitiously the whole results of the cause, including the duties of a constable. Sound policy requires that such superstition should be punished by pecuniary loss to its votaries, rather than that the proper power and action of the Court should be misunderstood and misinterpreted.
The latter portion of the fourth ground of appeal imputes special negligence to the Master, because in the bill of foreclosure instituted by him, he did not seek and procure a co-temporaneous decree for all the money Burrill owed on his bond. Passing by the consideration which has been sufficiently discussed, that it was the primary duty of the guardian to institute and control such proceeding, and granting that the Master was responsible for the conduct of the cause, it would be most harsh to convict him of negligence for *532 not taking at the time a money decree on a bill of foreclosure. The decree of foreclosure was rendered in January, 1840. Before that time a single instance in 1837 is brought to our attention of a money decree accompanying a decree of foreclosure, in a case not taken to the Court of Appeals nor reported. Before the Act of December, 1840, providing that money decrees should create a lien as to third persons, without express notice, only from the time of enrolment, and while the doctrine prevailed that filing the decree was equivalent to enrolment, it was very unusual to pray for or to take a money decree in bills for foreclosure. Afterwards the practice has grown up gradually of taking in this Court the double remedy of a decree for the debt as well as for foreclosure of the real security; but the practice even now, although judicious and approved, where the security may be insufficient, is far from being universal, and is confessedly a departure from the procedure of the English Chancery. There the mortgagee may proceed at the same time on all his remedies at law and in equity, at law in ejectment, (his title here is much modified by our Act of 1791) or actions on his bond and other collateral securities, and by bill in equity for foreclosure. On bills for foreclosure in the usual course, it is referred to the Master to ascertain the amount of the.debt, and it is ordered that if the mortgagor pay the debt secured by. a day to be fixeá by the Master, the mortgagee must re-convey, and in default of payment, that the mortgagor be debarred and foreclosed from his equity of redemption. The time for redemption is frequently enlarged on motion, (in Edwards vs. Cunliffe, 1 Mad. 287, four times after a third peremptory day of payment,) and even if there be default at the ultimate time fixed, a final order of foreclosure is regarded as necessary. There now, as formerly here, the practice was to leave the mortgagee for further remedy, if the land mortgaged was inadequate for his satisfaction, to his remedy at law on the bond of the mortgagor. Seaton’s Forms, 137, et seq; Coote on *533 Mort. 492, 497. We cannot conclude, under the circumstances, that there was culpable negligence in not taking a money decree.
It is ordered and decreed that the appeal be dismissed and that the Circuit decree Tie affirmed.
Johnston and Dtjnkin, CC. concurred.

Appeal dismissed.