9190

McMAHAN v. WALHALLA LIGHT & POWER CO.

(86 S. E. 194.)

APPEAL AND ERROR. CHARGE. WATER AND WATERCOURSES. RIPARIAN RIGHTS.

1. CHARGE—APPEAL AND ERROR.—A request to charge, which, according to its words is incorrect or misleading, should be refused, and its refusal is not reversible error.

2. WATER AND WATERCOURSES—RIPARIAN RIGHTS.—Neither the upper nor lower riparian proprietor is entitled to monopolize the waters of a stream, and the lower proprietor should not be required, irrespective of the cost, to pond the waters reaching his mill in order to maintain a reasonable working head of water, before he can complain of an unreasonable use of the waters by an upper proprietor.

3. WATERS AND WATERCOURSES—RIGHTS OF RIPARIAN PROPRIETORS.—As between different riparian proprietors on the same stream, the right of each qualifies that of the other, and the question is whether, under the circumstances, the use of the water by one is reasonable and consistent with a corresponding enjoyment by the other, and a lower proprietor does not have the right to have the stream flow through his land in exactly its usual volume, but whether a riparian proprietor has made unreasonable use of the stream is for the jury, where there is any evidence proving unreasonableness.

Before MEMMINGER, J., Walhalla, November, 1914. Affirmed.

Action by J. R. McMahan against the Walhalla Light and Power Company. From judgment for plaintiff, defendant appeals.

*Mr. R. T. Jaynes,* for appellant, submits: *The upper proprietor may hold the water back and let it down in such a manner as may be necessary for the use of his mill, if the mill is adapted to the character of the stream and its use is reasonable, and the lower proprietor will not be heard to complain if he does not construct his dam so as to utilize the water as it is let down by the upper proprietor:* Farnham on Waters and Water Rights, 1613; 69 Wis. 52; 28 Vt. 459; 67 Am. Dec. 723; 29 Mich. 420; 18 Am. Rep. 106; 60 S. C. 266.

*Mr. M. C. Long,* for respondent, cites: *As to rights of different proprietors on same stream:* 60 S. C. 267; 81 S. C. 559.

September 10, 1915.

The opinion of the Court was delivered by Mr. Justice Fraser.

The appellant states its case as follows:

"This action was commenced on the 7th day of September, 1914, and is for damages, actual and punitive, in the sum of $10,000; alleged to have been sustained by plaintiff by reason of the construction of ·defendant's dam across Cane Creek, above the mill of plaintiff. The defendant answers and denies legal liability; also alleges that in the construction of its dam and in the operation of its power plant, it is making only a proper and reasonable use of the waters of said stream, and also alleges that plaintiff has made no reasonable, sufficient and adequate development at the site of his mill; that he has erected no dam of sufficient height to pond the waters in said stream so as to conserve the same and use the waters in the operation of his mill; that none of the waters are diverted by defendant or consumed by it in any way; that the waters naturally flowing in the channel of Cane Creek are only held for a reasonable time and then discharged, and all the water of said stream flows in its natural channel below defendant's dam, and reaches the site of plaintiff's mill and plant; that said water can be held by plaintiff by the erection of a dam of reasonable height, and used by him in the operation of his mill.

The cause came on for hearing before his Honor, R. W. Memminger, presiding Judge, at the November, 1914, term of Court of Common Pleas for Oconee county. At the conclusion of plaintiff's testimony, defendant moved for a nonsuit as to the cause of action for punitive damages and same was granted.

Before the argument of the case commenced, counsel for defendant read and submitted to the Court in writing, eight requests to charge.

The jury rendered a verdict for plaintiff for $50."

There are several exceptions, but appellant argues only one, to wit, refusal of his Honor to charge its 8th request to charge. This presentation practically covers the question between the parties.

This is the refused request to charge:

"8. The lower proprietor must use due care in the construction, maintenance and operation of his dam, mill, machinery and appliances, so as to maintain a reasonable working head of water in his pond in order to operate his mill and machinery and let the water on to his water wheels in a reasonable and proper manner—such a manner as would be adopted by a man of ordinary reason, diligence and judgment in such matters, before he can be heard to complain of the use of the waters of the stream for a like purpose by persons above him."

Judge Memminger charged the jury as follows:

"Now, that is a very plain idea of the law, gentlemen. It is not hard to understand. It is simply for you to apply.

Now, it is very clearly laid down here in one of the cases, and I want to read that to you, and I want you to give it your attention. It is very short. You can certainly understand this case. *White* v. *Manufacturing Company,* 60 S. C. 267, 38 S. E. 456, and *Mason* v. *Apalachee Mills,* 81 S. C. 559, 62 S. E. 399, 871.

'As between different proprietors on the same stream, the right of each qualifies that of the other, and the question always is not merely whether the lower proprietor suffers damage by the use of the water above him, nor whether the quantity flowing on is diminished by use, but whether, under all the circumstances of the case, the use of the water by one is reasonable and consistent with a correspondent enjoyment

by the other.' · He must use it with due regard to the rights of the other one below him.

And it is laid down here in a little longer sentence than that, but perfectly easily understood, so that you will have it clearly before you if you give your attention to this:

'The different owners of land through which a stream flows are each entitled to the reasonable use of the water, and for an injury to one owner, incidental to the reasonable use of the stream by another, there is no right of redress. It does not necessarily follow from either the decrease in the volume of water due to its use by the upper proprietor or the increase due to the storage by the upper proprietor that there has been an unreasonable use, and, therefore; a right of action to the lower proprietor for any resulting injury. If it were the rule that the lower proprietor had the right to have the stream flow through his land in exactly its usual volume the result would be to destroy the equality of right of all the proprietors of the land through which the stream flowed and give to the lowest proprietor a monopoly of its use. Whether a riparian proprietor has made unreasonable use of the stream is always a question for the jury where there is any evidence tending to prove that the use was unreasonable. In the decision of the question'—now, gentlemen, understand that—'in the decision of the question all the circumstances are to be considered by the jury—the capacity of the stream, the adaptation of the machinery to it, the general usage of the country in similar cases, and any other facts bearing on the issue.' "

The question here is in reference to a request to charge and not as to the form of an exception. When this Court comes to construe an exception, it will make its construction as liberal as the language will allow, in order to decide the question involved, unless it is satisfied that the statement has mislead the respondent to his injury. The statement of a request to charge stands upon a different plane. If the request to charge, according to its words, is incorrect or misleading, it should be refused and its refusal

is not reversible error. It may be that while the wording of a request to charge is not entirely accurate, yet the record may show that the sense in which the words were used were so explained that the inaccurate words could not have mislead the jury, but the burden would be upon him who made the request to show that the inaccurate statement was not misleading and show it from the record. The jury hear the request read, and if the statement is an erroneous statement of law or misleading the verdict is fatally endangered.

We must assume that appellant's position in this Court and in the Circuit Court is the same or the Circuit Judge is taken at a disadvantage.

The appellant, in its argument in this Court, states its contention that the law of this State is that "the lower proprietor can not be heard to say, 'it will cost something to change my dam; to pond the water will flood some of my pasture land, and for this reason the upper proprietor can not use any more water than I am using.' Such a rule would practically give the lower proprietor a monopoly of the stream."

The rule as stated by appellant would give the monopoly to the upper proprietor. It may be it would require the lower proprietor to flood not only his own, but his neighbor's land and even the public highways. It would require the lower proprietor to pond the water at any cost. The law of this State takes account of the rights of both, as was so well and forcefully stated in the cases quoted.

The judgment is affirmed.