0103

Lewis Winston BARTLES, Appellant, v. Mark LIVINGSTON and Garen Livingston, Respondents.

(319 S. E. (2d) 707)

Court of Appeals

450

*W. Ryan Hovis*, Rock Hill, *for appellant.*

*W. Clarkson McDow, Jr.*, of *Roddey, Carpenter & White*, Rock Hill, *for respondents.*

Heard Nov. 9, 1983.

Decided Feb. 27, 1984.

Reheard May 14, 1984.

On Rehearing July 23, 1984.

BELL, Justice:

This is an action for a deficiency judgment by the holder of a second mortgage on real estate. The circuit court denied relief and the mortgagee appeals. We reverse and remand.

Lewis Bartles and Mark Livingston are medical doctors. In the spring of 1976 Livingston joined Bartles in his medical practice. Through Bartles, Livingston learned that one Benjamin McGraw, a business associate of Bartles, had decided to sell his house at Tega Cay in York County for $125,000.00. At that time the property was subject to two mortgages: a first mortgage to North Carolina National Bank Mortgage Corporation (the Bank) securing a note for $74,700.00 and a second mortgage to Bartles securing a note for $51,000.00. The note to Bartles was given for certain business debts of McGraw.

In May 1976 Livingston and his wife Garen purchased the house from McGraw. They assumed the notes and mortgages to the Bank and Bartles. The note and mortgage of McGraw to Bartles was in default at the time of purchase. The default was never cured. Bartles and Livingston terminated their joint medical practice in October 1976. In May 1977 the Livingstons moved from Tega Cay to Charlotte, North Caro-

lina. Bartles commenced action to foreclose his mortgage in July 1977. His complaint prayed for a personal deficiency judgment against the Livingstons. In February 1978 the mortgage to the Bank was also in default, prompting the Bank to bring a foreclosure action. The Bank likewise prayed for a deficiency judgment.

At the time Bartles's action was commenced, the Livingstons lived in North Carolina and they were served with the summons and complaint in North Carolina. They entered a special appearance to contest personal jurisdiction of the court to grant a deficiency judgment. Their jurisdictional objection was heard in March 1978, but the court held that the matter of personal jurisdiction was not ripe for decision until the property had been sold and a deficiency actually existed. The court ordered the foreclosure action to proceed. With the consent of all parties, the court consolidated Bartles's action with the proceeding brought by the Bank. The Livingstons then accepted service of the Bank's summons and complaint, reserving their jurisdictional objection in the Bartles action.

After a reference was held, the court entered its decree of foreclosure. As the Livingstons had filed no answer or other responsive pleading in either action and made no appearance, they were adjudged to be in default. The court then decreed that the Livingstons were indebted to the Bank in the principal amount of $73,817.35, on which interest was accruing at $18.20 per diem from April 1, 1977, plus $1,005.05 for taxes and insurance premiums paid by the Bank on the property. The court further decreed the Livingstons to be indebted to Bartles in the principal sum of $51,000.00, on which interest was accruing at $12.50 per diem from May 13, 1976, less a credit of $1,147.50 for interest payments made by the Livingstons. The court ordered the mortgages foreclosed, the property sold, and the proceeds applied to pay the indebtedness. It retained jurisdiction for the purpose of awarding any deficiency judgments against the Livingstons, subject to their jurisdictional objection in the Bartles case.

The property was advertised and sold at public auction on August 7, 1978. Bartles was the successful bidder with a bid of $100,000.00. However, he did not comply with his bid. The property was again advertised and sold at public auction on December 4, 1978. At this sale Bartles was again the suc-

cessful bidder with a bid of $90,000.00. Bartles complied with this bid in March 1979, at which time the special master paid the costs of sale, satisfied the indebtedness to the Bank, and delivered a deed conveying the property to Bartles. An unapplied balance of $463.80 remained to satisfy all claims junior to the Bank's mortgage. The master's report of sale was confirmed by order of the court on July 19, 1979, with leave to Bartles to apply for a deficiency judgment within thirty days.

At the hearing on Bartles's petition for a deficiency judgment the Livingstons again entered a special appearance contesting the personal jurisdiction of the court. By consent, the court ordered the action to proceed on the merits with the jurisdictional issue being preserved. The Livingstons answered the petition, reserving their jurisdictional objection. The matter was referred to a special referee who issued his report finding that the court had personal jurisdiction of the Livingstons and recommending that a deficiency judgment be granted in the amount of $66,676.20 plus interest, costs, and a reasonable attorney's fee.[1] The Livingstons filed numerous exceptions to the report. After hearing argument on the exceptions, the circuit court found that it had personal jurisdiction in the matter, but denied the prayer for a deficiency judgment. The judge held that rendition of a personal judgment is discretionary with the court and refused judgment because of (1) Bartles's failure to establish the amount of the debt; (2) Bartles's failure to comply with his bid at the first sale; (3) departure from the terms of sale provided in the foreclosure decree; and (4) the "nature of the early relationship between Dr. Bartles, Mr. McGraw, and Dr. Livingston."

## I.

We first address the additional sustaining grounds urged by the Livingstons in support of the judgment below. The Livingstons contend no deficiency judgment should be granted because the court lacked personal jurisdiction, or, in

[1] The referee apparently arrived at his figure by making the following calculations: the note was for $51,000 at 9% interest or $12.50 per diem. Interest for 1,383 days equals $17,287.50. When added to principal the total is $68,287.50 due on the note. After subtracting a $1,147.50 credit to the Livingstons for interest paid and $463.80 for closing costs, the balance due is $66,676.20.

the alternative, because they were given no notice of the foreclosure and sale. Both points are without merit.

The circuit court correctly held it had personal jurisdiction pursuant to § 36-2-803(1)(e), Code of Laws of South Carolina, 1976. That statute authorizes the exercise of jurisdiction over a person as to a cause of action arising from the person's having an interest in real property in this State. In this case the deficiency judgment was incidental relief in an action for foreclosure of a mortgage on real property. An action for foreclosure adjudicates and cuts off the mortgagor's interest in real property. It is a proceeding in personam as well as in rem. *Perpetual Building & Loan Association v. Braun,* 270 S. C. 338, 242 S. E. (2d) 407 (1978); *Anderson v. Pilgram,* 30 S. C. 499, 9 S. E. 587 (1889). Because the Livingstons had an interest in land which gave rise to the cause of action, the court had personal jurisdiction under the statute.

The circuit court also ruled correctly on the question of notice. The Livingstons clearly had actual notice that the Bank and Bartles had instituted foreclosure proceedings. They were personally served with the summons and complaint in both actions. They defaulted in both actions after consenting to consolidation. They did so with notice that both mortgagees intended to apply to the court for the relief requested in their complaints. The Livingstons were also given proper notice of the sale by publication in accordance with the decree of foreclosure and the applicable statutes. Their attorney admitted he did not check the legal notices in the newspapers or at the court house, although he knew the mortgages were being foreclosed. This neglect is hardly an impressive ground on which to claim lack of notice.

## II.

We now consider the grounds on which the circuit court denied the deficiency judgment.

Underlying the circuit court's decision was its holding, based on *Perpetual Building & Loan Association v. Braun,* 270 S. C. 338, 242 S. E. (2d) 407 (1978), that the rendition of a deficiency judgment is discretionary with the court. The judge interpreted *Braun* to mean the court may cut off the right to a deficiency judgment if it so chooses. This was error.

## A.

The rule in *Braun* is best understood in historical context. The common law mortgage was a conveyance of real property, subject to a condition of defeasance upon repayment of the debt by the due date. If the debt was not repaid when due, the mortgagee became the owner in fee simple absolute at law. *Mitchell v. Bogan*, 45 S.C.L. (11 Rich.) 686, 696 (1857) (Wardlaw, J., concurring); Lyttleton's Tenures, lib. iii, c. v, sect. 332 (Tomlin ed. 1841).

Equity, however, looked to the substance of the mortgage, not its form. Even if the debt was past due, equity compelled the mortgagee to reconvey the property to the mortgagor upon payment of the principal with interest and costs. *Hanmer v. Lochard* (1612) Toth. 132, 21 Eng. Rep. 145; *Bowen v. Edwards* (1661) 1 Ch. Rep. 221, 21 Eng. Rep. 555. In other words, the mortgagor was given an equitable right to redeem the property in defiance of the terms of the mortgage. If the mortgagee wished to realize his security, he had to cut off the equity of redemption. This was accomplished by bringing an action for strict foreclosure, which resulted in a decree of the court declaring that the equitable right to redeem was at an end. Once a decree of foreclosure was entered, the mortgagee held the fee simple free from the right of the mortgagor to redeem. *Mitchell v. Bogan, supra,* at 696-7 (Wardlaw, J., concurring); *Anderson v. Pilgram*, 30 S. C. 499, 9 S. E. 587 (1889); *Wiseman v. Westland* (1826) 1 Y. & J. 117, 148 Eng. Rep. 610; *Sampson v. Pattison* (1842) 1 Hare 533, 66 Eng. Rep. 1143.

The mortgagor's right to redeem was an equitable interest in the land. It was assignable, descendable, and devisable. *Mitchell v. Bogan, supra,* 696-7 (Wardlaw, J., concurring); *Casborne v. Scarfe* (1737) 1 Atk. 603, 26 Eng. Rep. 377; *Anon.* (1746) 3 Atk. 313, 26 Eng. Rep. 982. Its release to the mortgagee operated to convey title. *Mitchell v. Bogan, supra,* 697 (Wardlaw, J., concurring). In consequence, an action for strict foreclosure was an action in rem. Foreclosure adjudicated the rights of the parties in the property only. Its purpose was not to recover the indebtedness, which could be made the subject of a separate action at law,[2] but to establish the right of the mortgagee to the property free from the equity of redemption.

---

[2] *Took's Case* (1784) Dick. 785, 21 Eng. Rep. 476; *Burnell v. Martin* (1780) 2 Dougl. 417, 99 Eng. Rep. 268; *Aylet v. Hill* (1779) Dick. 551, 21 Eng. Rep. 384.

Thus, in a strict foreclosure there was no sale of the property and no deficiency to be enforced by personal judgment. *See, Anderson v. Pilgram, supra.*

### B.

In 1791 the common law was modified by statute in South Carolina. The Act of 1791 provided that henceforth "the mortgagor shall be still deemed owner of the land, and the mortgagee as owner of the money lent or due, and shall be entitled to recover satisfaction for the same out of the land. . . ." Section II, Act No. 1496, 5 Stat. at Large, 170 (1791). A corresponding change was made in the procedure to foreclose the mortgage. In lieu of an action for strict foreclosure in chancery, the Act authorized a suit in the court of common pleas for judgment on the debt, with power granted to the court, before judgment, to order a sale of the property and satisfy the debt from the proceeds. The Act stated: ". . . the mortgagor shall be forever barred and foreclosed by such sale from his equity of redemption, in as complete a manner as if the same had been foreclosed in a court of chancery. . . ." Section I, *id.*, at 169-170. Strict foreclosure in a court of equity was thus replaced with foreclosure by sale in a court of law.

### C.

The new procedure created a possibility that did not exist in an action for strict foreclosure. Since the debt was satisfied out of the land, a deficiency might exist if the land did not bring enough money to pay the debt in full. This created no difficulty if the procedure in the Act of 1791 was followed, because the law court could enter personal judgment for the deficiency after sale. It appears, however, that the procedure in the Act was not followed. Very early mortgagees began seeking foreclosure by sale in chancery instead of common pleas. *See, Blake v. Heyward,* 8 S. C. Eq. (Bailey Eq.) 208 (1831) (involving a foreclosure by sale in equity in 1806).[3]

---

[3] English chancery practice provided some precedent for foreclosure by sale in equity. *See, e.g., How v. Vigures* (1628) 1 Ch. Rep. 32, 21 Eng. Rep. 499; *Booth v. Rich* (1684) 1 Vern. 295, 23 Eng. Rep. 478; *Dashwood v. Bithazey* (1729) Mos. 196, 25 Eng. Rep. 347; *Gascoine v. Douglas* (1770) Dick. 431, 21 Eng. Rep. 337. A South Carolina statute of 1784 had also given the courts of chancery the power to order sale of mortgaged property in lieu of strict foreclosure. *See,* Section III, Act No. 1239, 4 Stat. at Large 642 (1784). This may have been the source for

When mortgagees began to bring bills of foreclosure in equity under the Act of 1791, two questions arose: (1) did the equity court have power to grant a personal judgment for the debt if there was a deficiency; and (2) if it did, should the personal judgment be included in the decree of foreclosure or be granted only after sale.

The first question was resolved in favor of the power of equity to grant personal judgment, although sufficient doubt remained that the issue was not authoritatively resolved until 1852.[4] The second question caused considerably more difficulty.

In the years following the Act of 1791, it became possible to obtain a money judgment as part of the decree of foreclosure in equity, but this practice seems not to have been common before 1840. *See, Blake v. Heyward, supra; Wightman v. Gray*, 31 S. C. Eq. (10 Rich. Eq.) 518 (1859). A statutory change in the manner of perfecting judgment liens led to a change of practice after 1840. *See,* Section XXIII, Act No. 2812, 11 Stat. at Large 119, 127 (1840). It then became common to seek a money judgment as part of the decree of foreclosure; but there remained considerable variation in actual practice. *See, Wightman v. Gray, supra; Gray v. Toomer*, 39 S.C.L. (5 Rich.) [261] 267 (1852). Until the 1890's, a mortgagee could elect to pursue his remedies in several different ways. He could foreclose the mortgage in equity, but seek a personal judgment on the debt in a separate action at law. This procedure was a holdover from pre-1791 common law practice. Alternatively, he could seek personal judgment for the full debt *and* foreclosure of the mortgage in a single decree in equity. In this

subsequent practice. Although statutory foreclosure in equity appears to have been the common procedure in 19th century South Carolina, statutory foreclosure at law was available in theory until the merger of law and equity in 1870. *See, Stoney v. Schultz [Shultz]*, 10 S. C. Eq. (1 Hill Eq.) 465 (1834).

[4] *See, Gray v. Toomer*, 39 S.C.L. (5 Rich.) 261 (1852), in which the circuit judge expressed the opinion that the court of chancery had no jurisdiction except to order the mortgage foreclosed. On appeal W. G. DeSaussure argued that the court of equity possessed the same power to render a money judgment in a foreclosure as a court of law. The Law Court of Appeals approved this view in dictum, citing the opinion of the Equity Court of Appeals to the same effect. That the question was still in doubt was probably due to Chancellor Kent's decision in *Dunkley v. Van Buren*, 3 Johns. Ch. 330 (1818), holding that judgment on the debt could not be granted in equity. *Dunkley v. Van Buren* was widely followed in other American jurisdictions, but was ultimately rejected in South Carolina. *See, Anderson v. Pilgram, supra.*

case, if a deficiency resulted, execution would issue on the decree without further proceedings in court. Finally, he could seek foreclosure of the mortgage with leave to apply for a deficiency judgment after sale. If a deficiency resulted, he went back to the equity court, which would determine the amount of the deficiency and enter a deficiency judgment. *See, Gray v. Toomer, supra.*

D.

Towards the end of the century, the Supreme Court made an attempt to rationalize these procedures. In *Anderson v. Pilgram, supra,* the Court eliminated the possibility of suing both in equity for foreclosure and at law for the debt. A mortgagee who elected to bring an action for foreclosure lost his right to sue at law for the debt. Henceforth his exclusive remedy on the debt was in equity. In *Hall v. Young,* 29 S. C. 64, 6 S. E. 938 (1888), and *Parr v. Lindler,* 40 S. C. 193, 18 S. E. 636 (1893), the Court held that in an action for foreclosure no personal judgment for the debt or any part thereof could be rendered before sale. This ruling eliminated the practice of including the personal judgment in the foreclosure decree. The net effect of these decisions was to create one uniform procedure for recovering a deficiency. The amount of the debt was established in equity and foreclosure was decreed. If a deficiency resulted from sale, the mortgagee came back to court and petitioned for a personal judgment for the amount of the deficiency. Execution could then issue on the deficiency judgment against the debtor's estate.

This judicial reform was short lived. In 1894 the General Assembly enacted a statute which restored the power of the court to grant a personal judgment in the foreclosure decree. Section 2, Act No. 548, 21 Stat. At Large 816 (1894). The Act of 1894 effectively nullified the holding in *Parr v. Lindler.* The deficiency could once again be recovered by one of two procedures: (1) by personal judgment for the debt in the foreclosure decree or (2) by a deficiency judgment granted after sale of the mortgaged property. The Act of 1894 set the stage for the development of the modern law on judicial discretion to render a deficiency judgment.

### E.

The key case for understanding the *Braun* decision is *Berry v. Caldwell*, 121 S. C. 418, 114 S. E. 405 (1922). In *Berry* the trial court refused the mortgagee's demand for personal judgment prior to the foreclosure sale, directing instead that judgment and execution be granted on any deficiency reported by the master after sale. The mortgagee took exception, arguing pursuant to the Act of 1894 that he should not be forced to wait until after the sale to obtain a personal judgment. In reply, the mortgagor contended that the Act did not abolish the former practice of rendering personal judgment after sale:

> . . . the Court *has the power* either to direct the sale of the property and order judgment thereafter to be entered for the deficiency, in accordance with the former provision; or to render judgment at the time of the decree of foreclosure for the entire debt and direct entry of said judgment . . . as provided in the later provision [of the Act of 1894]. The two provisions stand side by side and it is clearly discretionary with the Court which in a given case should be followed.

Brief for Defendants at 15, *id.* The Court agreed, holding that the statute gives the judge discretion to render personal judgment against the debtor either before or after the sale. *See also, Barron v. Southern Scale & Fixture Co.*, 106 S. C. 342, 344, 91 S. E. 321, 322 (1917) (under Act of 1894 court may in one decree give judgment for the amount due and also direct a sale of property mortgaged to secure the debt); *White v. Douglas*, 128 S. C. 409, 123 S. E. 259 (1924) (statute gives discretion to grant personal judgment at time of foreclosure decree or after sale).

As is apparent from the historical developments outlined above, *Berry v. Caldwell* dealt with a lingering problem created by the change from common law strict foreclosure to statutory foreclosure by sale. Nothing in the *Berry* decision suggested the novel rule that the right to personal judgment could be cut off at the discretion of the Court. This point is important for understanding the language in *Braun* on which the circuit court relied in the present case.

In *Braun* the issue was whether a deficiency judgment may

be granted when it is not specifically demanded in the fore-closure action. In his complaint, the mortgagee prayed for foreclosure of the mortgage, but did not ask for personal judgment on the debt. Following sale of the property, the indebtedness remained partially unsatisfied. The mortgagee then moved for a deficiency judgment. Harking back to the common law, the debtor asserted an action praying only for foreclosure was solely in rem and therefore could not support the granting of a personal judgment. The Court noted that the strict distinction between an in rem action for foreclosure of the mortgage and an in personam action on the debt was abandoned by the Act of 1791 in South Carolina. It held the granting of a deficiency judgment was proper because a de-cree for a deficiency is a necessary incident to statutory foreclosure. Thus it was within the court's discretion to grant a deficiency judgment, although it had not been prayed for in the foreclosure complaint. In reviewing the modern statutory scheme, the Court found a legislative intention to deny a deficiency judgment "only when such has been expressly waived." 270 S. C. at 343, 242 S. E. (2d) at 409.

As additional support for its holding in *Braun*, the Court relied on the Act of 1894. Citing *Berry v. Caldwell, supra,* the Court suggested that the statute makes "[t]he rendition of a personal judgment in mortgage foreclosure proceedings ... discretionary with the court." In other words, the Court inter-preted the statute as a broad grant of discretion to render a deficiency judgment incident to a foreclosure. As the dissent-ing opinion in *Braun* perceived, this holding actually ex-tended the language of the statute well beyond the decision in *Berry v. Caldwell* to cover a situation not involved in that case: *viz.,* the failure of the mortgagee to demand a deficiency judgment in his pleadings. Thus, instead of suggesting a discretion to cut off the mortgagee's right to a deficiency, the *Braun* decision actually enlarged the scope of judicial discre-tion to *grant* a deficiency judgment when a secured party's debt remains unsatisfied after sale. The import of *Braun* is the opposite of what the circuit court understood it to hold.

## F.

In our view, the result reached by the circuit court in this case is not only inconsistent with the thrust of *Braun*, but also

is foreclosed by the decision in *White v. Douglas*, 128 S. C. 409, 123 S. E. 259 (1924). In that case the Court held that the Act of 1894 does not give discretion to cut down the amount of the personal judgment. In the words of the Court:

> This statute did not purport to give a discretion to the Circuit Judge as to the amount of the judgment, but simply as to whether the personal judgment should be given at the time of the judgment of foreclosure or ... await the coming in of the Master's report of sale.

128 S. C. at 410, 123 S. E. at 259. Marion, J., concurring, indicated that this decision as to the time personal judgment will be entered defines the "limits" of the court's discretionary power. *Id.*

In conformity with the decisions in *White v. Douglas* and *Braun*, we hold that a mortgagee whose debt remains unsatisfied after sale of the property is entitled to a deficiency judgment, unless the right to a deficiency has been waived. Absent grounds to set aside the decree of foreclosure, there is no discretion to cut off the right to a deficiency after sale where (1) the complaint in the foreclosure action asks for personal judgment, (2) the amount of the debt is fixed in the foreclosure decree, and (3) the sale is insufficient to satisfy the entire debt. At most, the court may, as it did in this case, defer the granting of personal judgment until a deficiency actually results from the sale.

### III.

The additional grounds on which the circuit court denied the deficiency judgment were also erroneous as a matter of law. They involved matters which had already been adjudicated in prior proceedings and could not be raised by the Livingstons in the proceeding for the deficiency judgment.

The Livingstons claimed the deficiency judgment should be denied because of the early relationship of the parties. This was a belated attempt to challenge the validity of the debt. If the Livingstons felt the debt was unenforceable, the issue should have been raised in the foreclosure hearing. Once the foreclosure decree was entered and no appeal was taken, the debt was established. *Ruff v. Doty*, 26 S. C. 173, 1 S. E. 707 (1887). Absent grounds to set aside the

decree (and the Livingstons advanced none), it bound them in all subsequent proceedings. *Id.*

In a similar vein, the Livingstons argued that Bartles failed to establish the amount of the debt prior to foreclosure, as required by Section 29-3-630, Code of Laws of South Carolina, 1976. In the decree of foreclosure the court specifically found the amount of the debt to be $51,000.00 principal and $12.50 per diem interest from May 13, 1976, less a credit of $1,147.50 for interest paid. The Livingstons could have challenged the amount of the debt in the foreclosure hearing, but failed to do so. The amount of the debt fixed in the decree of foreclosure was a final adjudication thereof. *Haldane v. Sweet,* 58 Mich. 429, 25 N. W. 383 (1885); Jones on Mortgages, 8th ed., § 2206, p. 715 (1928). It bound the Livingstons in the proceeding for the deficiency judgment. *Id.*[5]

Finally, the Livingstons alleged there were irreg- ularities in the sale. This argument could not properly be considered, because the sale had already been confirmed by judicial order. Once entered, the order of confirmation related back to the time of sale and cured all defects and irregularities except those founded on lack of jurisdiction or fraud. *LeConte v. Irwin,* 23 S. C. 106 (1885); *Massey Ferguson Credit Corp. v. Cox,* 280 S. C. 450, 313 S. E. (2d) 320 (C. A. 1984).

---

[5] The Livingstons also argued, and the court held, that the amount of the debt was not established because the foreclosure decree did not fix the amount of Bartles's attorney's fees. The better practice is to set a specific fee in the foreclosure decree. Nevertheless, where there are likely to be proceedings for a deficiency judgment after sale (as where the proceeds are unlikely to satisfy junior liens) the court may, in its discretion, reserve the setting of attorney's fees until the deficiency hearing. This procedure has the practical advantage of letting the court set one fee at the conclusion of all proceedings incident to the foreclosure. At that point the court is in a better position to know the exact nature and extent of the services actually performed by the attorney in the case. Of course, if a fixed fee is not set in the foreclosure decree, no fee can be charged against the unapplied proceeds of sale or collected as a personal judgment until it is fixed by the court. However, no rule of equity requires the mortgagee to forfeit the entire amount of his unsatisfied debt simply because a fixed attorney's fee is not included in the decree of foreclosure. Nor does Section 29-3-630 compel that result. It was error to deny the deficiency on this ground.

## IV.

Although Bartles established the debt and was entitled to a deficiency judgment, his counsel concedes the Livingstons are entitled to an offset against the deficiency for Bartles's failure to comply with his bid after the first sale. The decree of foreclosure directed that if the successful bidder failed to comply with his bid within fifteen days, the mortgaged property should be readvertised for sale and resold at his risk. Accordingly, the second sale was at Bartles's risk. Since the property was bid in for $10,000 less at the second sale, the Livingstons are entitled to have the deficiency judgment reduced by $10,000 plus the additional costs and expenses occasioned by Bartles's failure to comply with his bid. *Camden v. Mayhew*, 129 U. S. 73, 9 S. Ct. 246, 32 L. Ed. 608 (1889); *Matthews v. Eslinger*, 41 Tenn. App. 116, 292 S. W. (2d) 543 (1955). These should include, without limitation, the costs of readvertisement and resale and any delay damages to the Livingstons such as added interest on the Bank's debt between the first and second sales. *Cf., Makani Development Co., Ltd. v. Stahl*, Haw. App., 670 P. (2d) 1284 (1983).

The judgment of the circuit court is reversed and the case remanded for further proceedings consistent with this opinion.

Reversed and remanded.

SANDERS, C. J., and GARDNER, J., concur.

## ORDER ON REHEARING

We granted rehearing to consider the Livingstons' contention that we reversed the judgment of the circuit court on a ground not raised by the appellant's exceptions.

As a general rule, this Court will not reverse the judgment of the circuit court, even if it is erroneous, on a ground not raised by a properly framed exception. *Rosamond Enterprises, Inc. v. McGranahan*, 278 S. C. 512, 299 S. E. (2d) 337 (1983); *Mackey v. Kerr-McGee Chemical Co.*, 280 S. C. 265, 312 S. E. (2d) 565 (S. C. App. 1984). If in examining an exception to discover whether it has been framed in violation of the rules, we ascertain that it clearly embraces a meritorious assignment of prejudicial error, we ordinarily will waive the breach of the rules and consider the exception. *Allen*

*v. Hatchell,* 242 S. C. 458, 131 S. E. (2d) 516 (1963); *Baker v. Weaver,* 279 S. C. 479, 309 S. E. (2d) 770 (S. C. App. 1983). The standard which guides us is whether, despite the improperly framed exception, the issue sought to be raised is reasonably clear to this Court and the adverse party. *Sandel v. Cousins,* 266 S. C. 19, 221 S. E. (2d) 111 (1975); *see Baker v. Weaver, supra.*

In this case, the Livingstons argue not that an exception was framed in violation of the rules, but that the ground on which the judgment was reversed is not raised at all by the exceptions. We think the Livingstons read the exceptions too narrowly in making this assertion.

Among other grounds for reversal, Bartles stated the following exceptions:

> 5. The Trial Judge committed error in finding that the debt of Appellant was not adequately established, the error being that the debt was established by the Decree of Foreclosure and Order Confirming Sale and was res judicata.
>
> 6. The Trial Judge committed error in denying Appellant a deficiency judgement based upon failure to establish the debt, the error being that the appropriate remedy would be judgement [sic] for the minimum debt clearly established and not forfeiture of the entire debt.

When this Court comes to construe an exception, it will make its construction as liberal as the language will allow, in order to decide the question involved, unless it is satisfied that the statement has misled the respondent to his prejudice. *McMahan v. Walhalla Light & Power Co.,* 102 S. C. 57, 86 S. E. 194 (1915) (dictum); *Zorn v. Crawford,* 252 S. C. 127, 165 S. E. (2d) 640 (1969). The Court is concerned with the substance of the appeal, not technical differences in the issues raised by the exceptions. *Mishoe v. Atlantic Coast Line Ry. Co.,* 186 S. C. 402, 197 S. E. 97 (1938).

Although the quoted exceptions do not state in so many words that the trial judge had no discretion to deny a deficiency judgment after the debt had been established and the sale judicially confirmed, we think they fairly comprehend that issue. The quoted exceptions and the arguments under them in Bartles's brief put the Livingstons on notice that Bartles was claiming the judge could not cut off his

right to a deficiency judgment once the debt had been established. That was the essential point of Bartles's appeal. It was also the ground on which we reversed the judgment.

While this Court is generally confined to the *issues* raised by the exceptions, it is not limited to the *reasoning* of the parties or the trial court in addressing those issues. Inevitably in an adversary process, the parties will at times stretch or distort arguments, facts, and rules of law in pursuit of a desired outcome. If we were bound to conform our opinions strictly to the arguments and reasoning of the parties, the result would often be bad decisional law. Of necessity, therefore, we must have the freedom to depart from the particular arguments urged on us by adversary parties when deciding the issues raised by an appeal. To confine ourselves solely to the reasoning of the parties would be an abdication of our duty as judges to decide cases independently and impartially in accordance with the law.

We have fully considered the other arguments raised by the Livingstons on rehearing. As to those issues, we adhere to the views expressed in our original opinion.

The remittitur shall be sent down ten days from the filing of this order.